# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

U.S. Bank, National Association,
As Legal Title Trustee For Truman
2016 SC6 Title Trust,

|  |  |  |
|---|---|---|
| | Plaintiff, | 6:26-CV-0070 |
| v. | | (MAD/MJK) |

Carmine P. Amelio, Paul A. Amelio,
Alfonso Amelio, Mortgage
Electronic Registration Systems, Inc.
Quicken Loans, Inc., et al.

                                    Defendants.

---

Carmine P. Amelio, Paul A. Amelio, and
Alfonso Amelio, *pro se* Defendants

Sean K. Monahan, Esq., for Plaintiffs

Mitchell J. Katz, U.S. Magistrate Judge

To The Honorable Mae A. D'Agostino, U.S. District Judge:

## ORDER AND REPORT-RECOMMENDATION

Currently before the Court is: (1) Plaintiff's motion to remand (Dkt. 18); (2) Defendants Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio's (collectively referred to as "Amelio Defendants") Emergency Supplemental Motion for Temporary Restraining Order to Enforce Removal of Stay and Declare Post-Removal Foreclosure Sale Void (Dkt. 19);

(3) Defendant Carmine P. Amelio's application to proceed *in forma pauperis*

("*IFP* Application") (Dkt. 3); and (4) the Amelio Defendants' Motion to

Enforce Removal of Stay and to Declare Post-Removal State Court Action

Null and Void (Dkt. 7). On March 10, 2026 United States District Judge

Mae A. D'Agostino referred this matter to me for Report and

Recommendation pursuant to 28 U.S.C. § 636(b).

For the following reasons, this Court recommends that: (1) the Amelio

Defendants' Notice of Removal (Dkt. 1) be dismissed with prejudice; (2) the

Amelio Defendants' Emergency Supplemental Motion for Temporary

Restraining Order to Enforce Removal of Stay and Declare Post-Removal

Foreclosure Sale Void (Dkt. 19) be denied with prejudice; and (3)  Plaintiff's

Motion to Remand (Dkt. 18) be denied as moot. The Court also: (1) grants

Defendant Carmine P. Amelio's *IFP* Application (Dkt. 3); and (2) denies

with prejudice the Amelio Defendants' Motion to Enforce Removal of Stay

and to Declare Post-Removal State Court Action Null and Void (Dkt. 7).

## I.    FACTS

The following facts are relevant to the Court's analysis of the

parties' motions:

- On December 22, 2022, Plaintiff commenced a foreclosure
  action in New York Supreme Court, County of Oneida, Index

2

No. EFCA2023-000004, to foreclose on a note executed by Defendant Paul A. Amelio and mortgage executed by Defendants Paul A. Amelio, Carmine Amelio, and Alfonso Amelio and secured by certain property located in Whitesboro, NY. (Dkt. 18-1).

- On October 17, 2023, Defendant Alfonso Amelio was served with the Summons and Complaint at 32 Main Street, New Milford, CT 06776 pursuant to CPLR § 308(4). The required mailing was done on October 18, 2023 and the affidavit of service was filed on October 26, 2023. (Dkt. 18-3, pgs. 16-17).

  Defendant Alfonso Amelio was served with an additional copy of the Summons and Complaint on October 18, 2023 at 13 Academy Avenue, Middletown, NY 10940 via a person of suitable age and discretion under CPLR § 308(2). The additional mailing was done on October 19, 2023 and the affidavit of service was filed on October 26, 2023. (Dkt. 18-3, pgs. 13-14).

- On January 18, 2023, Defendant Carmine Amelio was served with the Summons and Complaint at 4915 Clinton Road, Whitesboro, NY pursuant to CPLR § 308(4). The requisite mailing was done on January 18, 2023 and the affidavit of service was filed on January 19, 2023. (Dkt. 18-3, pg. 2).

  Defendant Carmine Amelio was served with an additional copy of the Summons and Complaint on June 22, 2024 at 32 Main Street, New Milford, CT 06776 under CPLR § 308(4). The requisite mailing was done on June 26, 2024 and the affidavit of service was filed on June 27, 2024. (Dkt. 18-3, pgs. 10-11).

- On October 17, 2023, Defendant Paul Amelio was served with the Summons and Complaint at 32 Main Street, New Milford, CT 06776 under CPLR § 308(4). The requisite

3

mailing was done on October 18, 2023 and the affidavit of service was filed on October 26, 2023. (Dkt. 18-3, pgs. 3-4).

Defendant Paul Amelio was served with an additional copy of the Summons and Complaint on October 11, 2023 at 401 E. 34th Street, Apt N11B, New York, NY 10016 via a person of suitable age and discretion under CPLR § 308(2). The requisite mailing was done on October 16, 2023 and the affidavit of service was filed on October 18, 2023. (Dkt. 18-3, pgs. 6-7).

- On December 20, 2024, Plaintiff filed a motion for a default judgment and order of reference in Oneida County Supreme Court. The Amelio Defendants did not oppose the motion. (Dkt. 18-1, Monahan Decl., ¶ 7).

- On February 13, 2025, Oneida County Supreme Court granted Plaintiff's motion and entered a default judgment and order of reference. (*Id.*). Notice of entry was served on March 17, 2025. (Dkt. 18-4). The Amelio Defendants did not appeal and their time to do so has expired. (Dkt. 18-1, Monahan Decl., ¶ 7).

- On September 17, 2025, Plaintiff filed a motion for a judgment of foreclosure and sale. The Amelio Defendants did not oppose Plaintiff's motion. (Dkt. 18-1, Monahan Decl., ¶ 8).

- On October 17, 2025, Oneida County Supreme Court granted Plaintiff's motion and entered a judgment of foreclosure and sale. (Dkt. 18-5, pgs.7-16). Notice of entry was served on October 28, 2025. (Dkt. 18-5).  The Amelio Defendants did not appeal and their time to do so has expired. (Dkt. 18-1, Monahan Decl., ¶ 8).

- A foreclosure sale was scheduled for January 14, 2026. (Dkt. 18-1, Monahan Decl., ¶ 9). The notice of sale was served on Defendants. (Dkt. 18-6).

4

- On December 31, 2025, Defendant Carmine Amelio filed a proposed order to show cause to vacate the judgment of foreclosure and sale. (Dkt. 18-1, Monahan Decl., ¶ 10). On January 8, 2026, Oneida County Supreme Court declined to sign the proposed order to show cause and ordered that the foreclosure sale scheduled for January 14, 2026 may proceed without stay or restraint. (Dkt. 18-7).

- On January 9, 2026, the Amelio Defendants filed a motion to vacate the judgment of foreclosure and sale and dismiss the action. (Dkt. 18-1, Monahan Decl., ¶ 11). On January 12, 2026, Oneida County Supreme Court denied the motion with prejudice for the same reasons stated in its January 8, 2026 decision. (Dkt. 18-8).

- On January 14, 2026, the mortgaged premises was sold at the foreclosure sale to Plaintiff. (Dkt. 18-1, Monahan Decl., ¶ 12, Dkt. 18-9).

- On January 14, 2026, the Amelio Defendants filed a notice of removal with the District Court for the Northern District of New York. (Dkt. 1).[1][2]

---

[1] Paragraph "13" of the Monahan Declaration incorrectly notes that the notice of removal was filed in the Southern District. (Dkt. 18-1, Monahan Decl., ¶13).

[2] Page "4" of Plaintiff's Memorandum of Law incorrectly states that only Defendant Carmine Amelio signed the notice of removal. *Compare* (Dkt 18-10, pg. 4) *with* (Dkt. 1, pg. 6)

## II.   DISCUSSION

### A. The Amelio Defendants' removal is untimely.

This Court recommends that the District Court dismiss the Amelio Defendants' Notice of Removal (Dkt. 1) with prejudice because it is untimely.

28 U.S.C. § 1446(b)(1) provides:

The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

The 30-day in 28 U.S.C. § 1446(b)(1) begins to run when the last defendant is served. *See Pietrangelo v. Alvas Corp.*, 686 F,3d 62 (2d Cir. 2012). "If a notice of removal is untimely, the case must be remanded to the state court." *Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 146 (2d Cir. 2023) (citing 28 U.S.C. § 1447). Here, service on Defendant Carmine Amelio, the last served defendant, was completed on June 26, 2024 (Dkt. 18-3, pgs. 10). Accordingly, the Amelio Defendants had until approximately July 26, 2024 to remove Plaintiff's state court complaint. Instead, the Amelio Defendants waited until January 14, 2026, more

6

than 18 months after Defendant Carmine Amelio was served to remove this case from Oneida County Supreme Court to this Court. Because the Amelio Defendants waited 18 months, this Court recommends that the District Court find their removal untimely.

### B. The entry of a judgment of foreclosure and sale precludes the Amelio Defendants' removal.

Even if the District Court finds that the Amelio Defendants timely filed their removal petition, it should nevertheless be dismissed with prejudice because Oneida County Supreme Court entered a final judgment which cannot be removed to federal court.

"[R]emoval is not authorized after final judgment is entered in a state action. . . . [O]nly 'pending' actions may be removed from state to federal court." *Deutsche Bank Nat'l Trust Co, as Tr. for Morgan Stanly Mortg. Loan Trust. 2005-10 v. Reddy*, No. 3:23-CV-0979, 2023 WL 8253767, at *3 (D. Conn. Nov. 29, 2023) (quoting § 1441(a)); *see also Meghila, LLC v. Chalek*, No. 1:24-CV-8986 (LTS), 2025 WL 436677, at *2 (S.D.N.Y. Jan. 13, 2025) ("[R]emoval is improper once the state court has entered judgment."); *Williams v. Audubon TP4 LLC*, No. 1:23-CV-8758, 2023 WL 8528552, at *6-7 (S.D.N.Y. Dec. 5. 2023). "[I]t would be a perversion of the removal process to allow a litigant who is subject to a

final judgment to remove that final judgment to the federal courts for further litigation." *Four Keys Leasing & Maintenance Corp. v. Simithis*, 849 F.2d 770, 774 (2d Cir. 1988). "'A judgment of foreclosure and sale is final as to all questions at issue between the parties, and concludes all matters of defense which were or could have been litigated in the foreclosure action.'" *Tromba v. Eastern Fed. Sav. Bank, FSB*, 148 A.D.3d 753 (2nd Dept. 2017) (quoting *Ciraldo v. JP Morgan Chase Bank, N.A.*, 140 A.D.3d 912 (2nd Dept 2016)); *see also Citibank, N.A. v. Swiatkoski*, No. 04-CV-5122, 2005 WL 6796770, at *2 (E.D.N.Y. Mar. 18, 2005) (remanding foreclosure action where New York Supreme Court had already entered judgment of foreclosure and appeal was pending when notice of removal was filed), *aff'd* 160 Fed. Appx. 30 (2d Cir. 2005).

Here, the Hon. Louis P. Gigliotti, J.S.C. issued a Judgment of Foreclosure and Sale on October 17, 2025 without any opposition from the Amelio Defendants. (Dkt. 18-5, pgs. 7-16). The Amelio Defendants did not appeal the Judgment of Foreclosure and Sale and their subsequent motion to vacate their default and the Judgment of Foreclosure and Sale was denied on January 8, 2026 by Justice

8

Gigliotti. (Dkt. 18-7). Justice Gigliotti specifically ruled that the "judgment is final as to all issues that were or could have been litigated in this action, and Defendants may not collaterally attack that judgment through the instant application." (*Id.*, at pg. 2). And because Justice Gigliotti ruled that the Judgment of Foreclosure and Sale is "final," the Oneida County Supreme Court action is no longer pending and therefore cannot be removed to this Court. The Court therefore recommends that the Amelio Defendants' removal petition (Dkt. 1) be dismissed with prejudice.

### C. The District Court Lacks Subject Matter Jurisdiction.

Even if the Amelio Defendants' removal was procedurally proper, the Court recommends their Notice of Removal (Dkt. 1) be dismissed for lack of subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and *Rooker-Feldman.*

### i.    28 U.S.C. § 1331

For the District Court to have jurisdiction, the action must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that

the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Invoking federal jurisdiction without pleading any facts demonstrating a federal law claim, does not create federal subject matter jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996). "A defendant may not generally remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 10 (1983)).

Subject matter jurisdiction may not be manufactured by virtue of a defendant's proposed defenses, crossclaims, or counterclaims. *See City of Philadelphia v. Bradley*, 2024 WL 4755810 (S.D.N.Y. Oct. 15, 2024) (subject matter jurisdiction "could not be create[d] for purposes of removal based on [plaintiff's] federal defenses, crossclaims, or counterclaims"); *see also Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co.*, 357 F. Supp. 2d 529, 533, 536 (E.D.N.Y. 2004)

10

(applying the well-pleaded complaint rule and remanding the case to state court because no federal question was presented in pleadings until the defendant's counterclaim).

Here, Plaintiff commenced the Oneida County Supreme Court foreclosure action under state law, not federal law. *See* (Dkt. 2). Nevertheless, and in support of their removal petition, the Amelio Defendants allege that "this action necessarily raises **substantial disputed federal questions.**" (Dkt. 1, pgs. 3-4) (emphasis in original). However, it is well-established in this Circuit that claims like those asserted by the Amelio Defendant do not confer the District Court with subject matter jurisdiction. *See Einhorn v. Best*, No. 10-CV-09377, 2011 WL 1046064, at *3 (S.D.N.Y. Feb. 10, 2011) (removing defendants' argument that state-court foreclosure action violated their constitutional rights did not confer federal question jurisdiction), *report and recommendation adopted*, 2011 WL 1046092 (S.D.N.Y. Mar. 21, 2011); *see also Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 9 (E.D.N.Y. 2005) (no subject matter jurisdiction over removed foreclosure action where removing defendant contended that her constitutional and federal civil rights had been violated). Accordingly, the Court

recommends finding that the Amelio Defendants' removal petition does not arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331

### ii.    28 U.S.C. § 1332

In addition to federal question jurisdiction, federal court jurisdiction can be invoked under 28 U.S.C. § 1332, where a plaintiff and defendant are citizens of different states. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Further, to establish diversity jurisdiction, a plaintiff must allege to a "reasonable probability" that the claim is more than the sum or value of $75,000.00, the statutory jurisdictional amount. See 28 U.S.C. § 1332(a); *see also Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). However, an action may not be removed to federal court based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Also, jurisdiction based on diversity of citizenship may not be removed "more than 1 year after commencement of the action." 28 U.S.C. § 1446(c)(1).

Here, the Amelio Defendants' Notice of Removal states that they are "citizens of New York." (Dkt. 1, pg. 2, sec. II, ¶ 2). And because the underlying action was commenced in New York, the Amelio Defendants are precluded from removing the Oneida County Supreme Court action to federal court. The Amelio Defendants are also precluded from removing the Oneida County Supreme Court action to federal court because more than 1 year has elapsed since the commencement of the action.

### iii.    *Rooker-Feldman*

The Cout recommends that the Amelio Defendants' Notice of Removal be dismissed under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine stands for the proposition that federal district courts lack jurisdiction to review state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005). The *Rooker-Feldman* doctrine has four requirements: (1) the federal-court plaintiff lost in state court; (2) the plaintiff's injury is caused by the state court judgment; (3) the plaintiff invites review of the state court judgment; and (4) the state judgment was issued before

13

the federal action commenced. *See Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir.2005). Here, all factors are easily met.

As to the first element, the Amelio Defendants lost at the state court level via default judgment and entry of a judgment of foreclosure and sale. *See* (Dkt. 18-5). As to the second and third elements, the Amelio Defendants seek to challenge the Oneida County Supreme Court judgment, inviting review of the underlying foreclosure via various federal law claims. At its core, the Amelio Defendants seek a remedy for "an injury caused by a state judgment" — i.e., the foreclosure of the mortgaged premises, which they now ask this Court to review. *See Hoblock*, 422 F.3d at 87; *see also Swiatkowski v. Citibank*, 446 F. App'x 360, 361 (2d Cir. 2011) (applying *Rooker-Feldman* where claims "depended entirely on the validity of the underlying state court foreclosure judgment"); *In re Wilson*, 410 F. App'x 409, 410 (2d Cir. 2011) ("application of the *Rooker-Feldman* doctrine was warranted in light of the connection between the federal complaint and the state court default foreclosure judgment").

14

As to the fourth and final element, the Amelio Defendants seek to remove the Oneida County action more than 3 months <u>after</u> the Judgment of Foreclosure and Sale was entered. (Dkt. 18-5, pg. 5).

***

Because the Amelio Defendants cannot establish federal question or diversity jurisdiction coupled with the fact that the relief they seek is barred by *Rooker-Feldman* the Court recommends that the District Court dismiss their Notice of Removal with prejudice.

### D. Plaintiff's request for sanctions

The Court recommends that Plaintiff's motion for sanctions be granted.

Fed. R. Civ. P. 11 governs motions for frivolous filings. "A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law." *See Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal citations and quotations omitted). Courts impose Rule 11

15

sanctions with discretion and caution. *See Caisse Nationale de Credit Agricole-CNCA v. Valcorp.*, 28 F.3d 259, 264 (2d Cir. 1994).Where a *pro se* litigant is alleged to have violated Rule 11, Courts apply a more lenient standard than would be applicable where a party is represented. *See Sachs v. Matano*, No. 15-CV-6049, 2016 WL 4179792, at *7 (E.D.N.Y. July 15, 2016), *report and recommendation adopted*, 2016 WL 4186708 (E.D.N.Y. Aug. 4, 2016). Indeed, courts "do[] not expect litigants proceeding pro se to grasp complex legal concepts, including the grounds upon which the [c]ourt relied to dismiss plaintiff's claims[,] . . . with the same level of understanding as attorneys." *McCluskey v. New York State Unified Ct. Sys.*, No. 10-CV-2144, 2010 WL 11632696, at *1 (E.D.N.Y. July 9, 2010). Put differently, it is proper for Courts to "consider the special circumstances of litigants who are untutored in the law." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989); *see also Zimmerman v. UBS AG*, No. 17-CV-04503 (JMF), 2018 WL 4054860, at *5 (S.D.N.Y. Aug. 24, 2018) (although "tempted to impose sanctions[,]" declining to do so "primarily because [the plaintiff] is proceeding pro se") (citing *Newman & Cahn, LLP. v. Sharp*, 388 F. Supp. 2d 115, 119 (E.D.N.Y. 2005) (declining to impose sanctions on a

pro se plaintiff even though the plaintiff's "petition [was] frivolous and unwarranted")).

In this case, the Amelio Defendants' previous actions before the Southern District of New York deny them the "benefit of the doubt" which would ordinarily be afforded to *pro se* litigants. (Dkt. 22, ¶ 23). The Court recommends the District Court deem the Amelio Defendants' Notice of Removal (Dkt. 1) to be frivolous. Given their history in the United States District Court for the Southern District of New York with filing removal petitions arising from a foreclosure action in Orange County, the Amelio Defendants were plainly aware that their current removal petition lacked any merit for the reasons articulated above. Yet, the Amelio Defendants chose to proceed with their filing. They have wasted this Court's limited resources, and they have also subjected the Plaintiff to unnecessary costs and expenses. The Court therefore recommends that sanctions be imposed against the three defendants, jointly and severally, in the amount of $2500, noting that only Carmine P. Amelio filed an application to proceed *in forma pauperis*.

### E.    The Amelio Defendants' Motion to Enforce Stay and Supplemental Emergency Motion.

On January 22, 2026, the Amelio Defendants filed a Motion to Enforce Removal of Stay and to Declare Post-Removal State Court Action Null and Void. (Dkt. 7). On March 6, 2026, the Amelio Defendants filed an Emergency Supplemental Motion for Temporary Restraining Order to Enforce Removal of Stay and Declare Post-Removal Foreclosure Sale Void. (Dkt. 19). These filings are nothing more than an end-around by the Amelio Defendants to obtain the same relief they sought to obtain through their Notice of Removal. However, for the reasons articulated above, the Amelio Defendants' efforts are futile. The Court therefore recommends that the Amelio Defendants' "emergency motion" be denied with prejudice. Further, the Court is denying with prejudice the Amelio Defendants' "motion to enforce stay."

Because the Court is: (1) recommending dismissal of the Amelio Defendants' Notice of Removal with prejudice; (2) recommending denial with prejudice of the Amelio Defendants' Emergency Supplemental Motion for Temporary Restraining Order to Enforce Removal of Stay and Declare Post-Removal Foreclosure Sale Void; and (3) denying with prejudice the Amelio Defendants' Motion to Enforce Removal of Stay

18

and to Declare Post-Removal State Court Action Null and Void because this Court lacks jurisdiction *ab initio*, Plaintiff's Motion to Remand is rendered moot. *See U.S. Bank v. O'hara*, No. 24-CV-8459, 2025 WL 358419, at * (S.D.N.Y. Jan. 21, 2025) (motion to remand denied as moot where court *sua sponte* dismissed notice of removal); *See Williams v. Audubon TP4 LLC*, No. 23-CV-8758, 2023 WL 8528552, at *7_ (S.D.N.Y. Dec. 5, 2023) ("The Court need not remand this improperly removed action …").

Despite its recommendation that the District Court deem Plaintiff's Motion to Remand moot, based on the Amelio Defendants conduct in the Southern District of New York, and the two motions filed in this Court, the Court is nevertheless recommending that the Amelio Defendants be specifically enjoined from filing any additional removal notices or motions in this Court associated with or related to the Oneida County Supreme Court foreclosure action bearing Index No. EFCA 2023-00004.

## III. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Notice of Removal (Dkt. 1) filed by Defendants Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that the Emergency Supplemental Motion for Temporary Restraining Order to Enforce Removal of Stay and Declare Post-Removal Foreclosure Sale Void filed by Defendants Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio (Dkt. No. 19) be **DENIED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that Plaintiff's Motion to Remand (Dkt. 18) be **DENIED** as moot; and it is further

**RECOMMENDED**, that Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio be enjoined from filing any additional removal notices associated with the Oneida County Supreme Court foreclosure action bearing Index No. EFCA 2023-00004; and it is further

**RECOMMENDED**, that sanctions be assessed against Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio, jointly and severally, in the amount of $2500; and it is further

20

**ORDERED**, that Defendant Carmine P. Amelio's application to proceed *in forma pauperis* (Dkt. 3) is granted; and it is further

**ORDERED**, that Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio's Motion to Enforce Removal of Stay and to Declare Post-Removal State Court Action Null and Void (Dkt. 7) is **DENIED WITH PREJUDICE**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio by regular mail.[3]

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 17, 2026.

                                          _____

                                          Hon. Mitchell J. Katz
                                          U.S. Magistrate Judge

---

[3] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

21

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 22 of 88

Deutsche Bank National Trust Co. as Trustee for Morgan..., Not Reported in Fed....

2023 WL 8253767

2023 WL 8253767
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

DEUTSCHE BANK NATIONAL TRUST CO.,
AS TRUSTEE FOR MORGAN STANLEY
MORTGAGE LOAN TRUST 2005-10, Plaintiff,

v.

Walter REDDY III, Defendant.

3:23-CV-979 (SVN)
|
Signed November 29, 2023

**Attorneys and Law Firms**

Benjamin T. Staskiewicz, McCalla Raymer Leibert Pierce, LLC, Hartford, CT, for Plaintiff.

Walter Reddy, III, Weston, CT, Pro Se.

### ORDER ON DEUTSCHE BANK'S MOTION FOR REMAND TO STATE COURT

Sarala V. Nagala, United States District Judge.

 **\*1**  Defendant Walter Reddy III, proceeding *pro se*, removed this summary eviction proceeding from the Connecticut Superior Court (Housing Session), Judicial District of Stamford/Norwalk. Notice of Removal, ECF No. 1. Plaintiff Deutsche Bank National Trust Company ("Deutsche Bank") has moved to remand the case to that court, arguing that Reddy's notice of removal is defective for various procedural reasons. ECF No. 13. Deutsche Bank also seeks an order preventing Reddy from filing another notice of removal in federal court related to this eviction proceeding.

While the Court cannot remand this case for the procedural reasons identified by Deutsche Bank, it holds that removal of this matter to federal court is not possible because the action has proceeded to final judgment and Reddy has exhausted his state appeal. Further, for the reasons stated below, the Court orders that Reddy shall not file another notice of removal of this action without first seeking this Court's approval. Thus, Deutsche Bank's motion to remand is DENIED IN PART and GRANTED IN PART, and the Court remands the case to the Connecticut Superior Court.

### I. BACKGROUND

This case comes before the Court after a protracted (and sometimes confusing) foreclosure and subsequent eviction dispute in the Connecticut Superior Court. On March 13, 2009, Deutsche Bank National Trust Company filed a foreclosure action against Reddy concerning a property located at 16 Briar Oak Drive in Weston, Connecticut. *Deutsche Bank Nat'l Tr. Co. v. Walter Reddy III*, Superior Court of Connecticut, Judicial District of Stamford–Norwalk, No. FST-CV09-5010722-S; *see also id.*, 2014 WL 5099379, at *1 (Conn. Super. Ct. Sept. 5, 2014). After more than five years of litigation, the Superior Court entered summary judgment for Deutsche Bank. *Id.* Then, on June 5, 2018, Deutsche Bank became the record owner of 16 Briar Oak Drive. *Deutsche Bank Nat'l Tr. Co. v. Walter Reddy III*, No. FST-CV09-5010722-S, Dkt. 217.02 (setting Law Day for June 5, 2018). On June 27, 2018, the Connecticut appellate courts dismissed Reddy's appeal in the foreclosure action as moot. *Id.*, Dkt. 243.00.

Deutsche Bank then initiated this eviction action concerning the 16 Briar Oak Drive property. *Deutsche Bank Nat'l Tr. Co. v. Walter Reddy III*, No. NWH-CV18-6004196-S (Conn. Super. Ct.). Deutsche Bank also initiated a separate eviction action for an in-law unit at 16 Briar Oak Drive. *Deutsche Bank Nat'l Tr. Co. v. Walter Reddy III*, No. NWH-CV18-6004197-S (Conn. Super. Ct.), Dkts. 100.30, 100.31. In the whole property action, which is the present matter, the Superior Court entered judgment in favor of the bank on February 5, 2020, after a full trial before the court. *Reddy*, No. NWH-CV18-6004196-S, Dkts. 122.00, 123.00. This judgment became final after Reddy's appeal to the Connecticut Appellate Court was dismissed as frivolous. *Id.*, Dkt. 159.00.

Both before and after the judgment, Reddy engaged in a series of gambits to delay the eviction proceeding. These tactics included willfully ignoring the judgment in the underlying foreclosure action, *id.* Dkts. 101.00 (request to revise plaintiff's complaint) and 109.00 at 2 (answer), removing to federal court for the first time, *id.* Dkt. 114.00, filing for bankruptcy the first time, *id.* Dkt. 135.00, filing for bankruptcy a second time, *id.* Dkt. 148.00, petitioning for a writ of *audita querela*, [1] *id.* Dkt. 156.00, having his appeal to the Connecticut appellate courts dismissed as frivolous, *id.* Dkt. 159.00, and removing to federal court for the second time after his appeal was dismissed as frivolous, *id.* Dkt. 160.00.

1   The writ of *audita querela* is a limited and extraordinary legal remedy "when enforcement of a judgment would be contrary to the ends of justice due to matters that have arisen since its rendition." *State v. Cotto*, 111 Conn. 818, 820 (2008)

**\*2**  Reddy has also advanced a series of conspiracy theories as to why Deutsche Bank cannot evict him. As part of his answer and defenses to the eviction complaint, Reddy claimed that Deutsche Bank had never retained the lawyers who appeared on its behalf to institute the proceedings against Reddy. *Id.* Dkt. 109.00 at 4 (First Special Defense). Instead, Reddy argued that the mortgage of his property was in fact owned by a third party, not Deutsche Bank, who had been fully paid, *id.* at 7–8 (Sixth Special Defense). Then, on his first removal of these actions, Reddy argued that the mortgage note on his property was owned by an individual named Jan Van Eck, who an initiated a suit against Deutsche Bank in federal court in Vermont to assert ownership. *See Detusche Nat'l Bank v. Reddy*, No. 3:19-cv-461 (VAB), ECF No. 15 at 6–7. The Vermont court dismissed Mr. Van Eck's lawsuit for failure to state a claim. *Van Eck v. Deutsche Bank Americas Holding Corp.*, No. 2:18-CV-232, 2019 WL 4776903 (D. Vt. Sept. 30, 2019). In 2019, Judge Bolden remanded this action and its companion case to the Connecticut Superior Court on various grounds, including lack of subject matter jurisdiction. *Detusche Nat'l Bank v. Reddy*, No. 3:19-cv-460 (VAB) (WIG), ECF No. 16; *Detusche Nat'l Bank v. Reddy*, No. 3:19-cv-461 (VAB) (WIG), 2019 WL 7343385 (D. Conn. Dec. 31, 2019). After remand, Reddy submitted an affidavit from Jan Van Eck once again asserting ownership over 16 Briar Oak Drive, this time referencing a suit he had filed against Deutsche Bank and its attorneys seeking damages and other relief. *Reddy*, No. NWH-CV18-6004196-S, Dkt. 147.00. Now Reddy has removed both actions to federal court for the second time, repeating many of the same arguments he has already advanced unsuccessfully throughout the litigation.[2] *See* ECF Nos. 1, 14.

2   Concurrent with this order, the Court is issuing an order remanding the companion case, *Deutsche Bank Trust Company v. Reddy*, Case No. 3:23-cv-970 (SVN), for similar reasons.

**II. DISCUSSION**

The Court will first address Deutsche Bank's motion to remand and the Court's authority to *sua sponte* remand, before turning to Deutsche Bank's motion to bar Reddy from removing this action again without this Court's approval.

A. Motion to Remand

Under 28 U.S.C. § 1441—the general federal removal statute —a defendant may remove a state court action to federal court if the federal court would have original subject matter jurisdiction over the action. The federal courts have original subject matter jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States ("federal question jurisdiction") and over matters involving parties with diverse citizenship where the amount in controversy exceeds $75,000 ("diversity jurisdiction"). 28 U.S.C. § 1331; 28 U.S.C. § 1332. There are certain procedural requirements for removal, including, among others, that the notice of removal must be filed within thirty days after the defendant receives a copy of the initial pleading or service of summons or thirty days after which it could first be ascertained that the case is removable, 28 U.S.C. § 1446(b)(1) & (b)(2)(C). An opposing party may file a motion to remand after a notice of removal is filed. 28 U.S.C. § 1447(c).

Deutsche Bank does not argue for remand because the Court lacks subject matter jurisdiction. Rather, it argues for remand based on procedural defaults in Reddy's notice of removal, including that the notice of removal was untimely, fails to explain the history of the case, and neglects to attach a copy of the relevant pleadings. The problem for Deutsche Bank is that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). This deadline "is plainly mandatory," and procedural defects in a notice of removal—including timeliness of the removal—are deemed waived if a motion for remand is not filed within thirty days of the filing of the notice of removal. *Phoenix Glob. Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005); *accord Pate v. City of Rochester*, 579 F. Supp. 3d 417, 421 (W.D.N.Y. 2022) (collecting cases). Reddy filed his notice of removal on July 24, 2023, ECF No. 1, and Deutsche Bank moved to remand on September 13, 2023, ECF No. 13, which is outside the 30-day window to move to remand on grounds other than a lack of subject matter jurisdiction. Indeed, despite the notice of removal being filed on the Superior Court docket, Deutsche Bank did not appear in this case until September 13, 2023. This Court lacks authority to "carv[e] out an exception to the mandatory" 30-day deadline in Section 1447. *Phoenix Glob. Ventures, LLC*, 422 F.3d at 76; *see also Pate*, 579 F. Supp. 3d at 422. Therefore, Deutsche Bank's procedural arguments

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 24 of 88

Deutsche Bank National Trust Co. as Trustee for Morgan..., Not Reported in Fed....

2023 WL 8253767

for removal are waived, and the Court must deny Deutsche Bank's motion to remand.

 **\*3**  Nonetheless, the Court remands this action to Connecticut Superior Court *sua sponte* because removal is not authorized after final judgment is entered in a state action. Under the statute governing the removal of civil actions, only "pending" actions may be removed from state to federal court. 28 U.S.C. § 1441(a). In *Four Keys Leasing & Maintenance Corp. v. Simithis*, the Second Circuit held that a final judgment from a state court exhausted on appeal cannot be removed to federal court. 849 F.2d 770, 774 (2d Cir. 1988); *accord Murray v. Hy Cite Corp./Royal Prestige*, 150 F. Supp. 2d 527, 530 (E.D.N.Y. 2001); *In re 73rd Precinct Station House in Borough of Brooklyn, City of New York*, 329 F. Supp. 1175, 1178 (E.D.N.Y. 1971). As the Second Circuit has explained, "it would be a perversion of the removal process to allow a litigant who is subject to a final judgment to remove that final judgment to the federal courts for further litigation.... [A] claim that has been reduced to a final judgment in the state court cannot be made subject to relitigation through removal." *Four Keys*, 849 F.2d at 774. Other circuits to have addressed this issue have come to the same conclusion. *See, e.g.*, *Oviedo v. Hallbauer*, 655 F.3d 419, 423–24 (5th Cir. 2011) ("Removal is simply not possible after a final judgment and the time for direct appellate review has run."); *Ohio v. Doe*, 433 F.3d 502, 507 (6th Cir. 2006) ("We agree with the reasoning of our sister circuits in ruling that when all that remains of an action is the enforcement of a judgment, removal to federal court is not authorized."); *Lloyd S. Mulvey Inc. Tr. v. Young*, 36 F. App'x 638, 2002 WL 1316486, at \*1 (9th Cir. 2002) (holding that a defendant "cannot remove a case that is no longer pending in the state court"); *Ristuccia v. Adams*, 406 F.2d 1257, 1258 (9th Cir. 1969) (*per curiam*) ("It would seem obvious that to remove an action to the federal courts from a state court, it must first be pending in the state court.").

This is exactly the scenario here. On February 5, 2020, the Superior Court entered judgment in favor of Deutsche Bank after a full trial. *Deutsche Bank Nat'l Tr. Co. v. Walter Reddy III*, No. NWH-CV18-6004196-S (Conn. Super. Ct.), Dkt. 123.00. This judgment became final after Reddy's appeal to the Connecticut Appellate Court was dismissed as frivolous. *Id.*, Dkt. 159.00. Thus, despite that Reddy has been attempting to prolong execution of the judgment through various litigation tactics—all unsuccessfully—the case is no longer pending for purposes of seeking removal to federal court. [3]

3    Other circuits to have addressed this issue have found that "remand to the state courts is 'impossible ... as a matter of logic,' as the absence of 'a removable cause of action [implies that there is similarly] no cause of action that can be remanded ....' " *Oviedo*, 655 F.3d at 425–26 (5th Cir. 2011) (quoting *Ristuccia*, 406 F.2d at 1258). Following this logic, the Fifth Circuit in *Oviedo* dismissed the removed case, rather than remanding it. 655 F.3d at 426. The Court declines to adopt this approach in this instance because it is concerned that outright dismissal would prejudice Reddy, who is acting *pro se* to litigate various post-judgment issues, and who may not have predicted that his attempt to remove the case would result in dismissal.

For these reasons, the Court remands the case to the Connecticut Superior Court.

### B. Motion to Bar Reddy from Removing Action

Deutsche Bank also moves for an order barring Reddy from removing this action again, unless Reddy first seeks and receives permission from this Court to do so. The Court grants this portion of Deutsche Bank's motion.

" 'A district court may, in its discretion, impose sanctions against litigants who abuse the judicial process,' including 'an injunction forbidding further litigation.' " *Nat'l Acad. of Television Arts & Scis., Inc. v. Goodman*, No. 22-592, 2023 WL 3989876, at \*2 (2d Cir. 2023) (summary order) (quoting *Shafii v. Brit. Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). The Court must consider the following factors:

(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

 **\*4**  *Eliahu v. Jewish Agency for Isr.*, 919 F.3d 709, 714 (2d Cir. 2019).

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 25 of 88

Deutsche Bank National Trust Co. as Trustee for Morgan..., Not Reported in Fed....

2023 WL 8253767

All of these factors weigh in favor of barring Reddy from removing this action again. This is Reddy's second attempt at federal removal; he filed for bankruptcy twice during the pendency of the state action, which appears intended to stall the eviction process; and his history of removing this litigation can now be considered vexatious.

Likewise, Reddy does not have an objective good faith expectation of prevailing. Judgment in this action was finalized in July of 2023 after the Connecticut Appellate Court dismissed Reddy's appeal as frivolous. The prior foreclosure action was finalized nearly seven years ago. Yet, at each turn, Reddy has advanced frivolous defenses and removals of the action to delay the litigation. While the Court understands that eviction is difficult and painful for any person, Reddy can have no good faith expectation of prevailing, given the number of times his claims and motions have been denied.

That Reddy is proceeding *pro se* also weighs in favor of a bar. Reddy himself, not counsel, is responsible for his bad faith litigation. And it is Reddy, not counsel, who would be subject to sanctions for his frivolous claims. *See Deutsche Bank Nat'l Tr. Co. v. Koch*, No. 3:23-cv-1022 (JAM), 2023 WL 6804727, at \*4 (D. Conn. Oct. 16, 2023).

Further, Reddy has caused needless expense to Deutsche Bank and posed an unnecessary burden on the courts. As the Court has already discussed, Reddy has extended the lifespan of this case from 2009 to today. At every turn, Reddy has engaged in tactics to delay foreclosure and eviction. It appears Reddy may have engaged an unrelated third party to engage in a frivolous lawsuit in Vermont to assert ownership over his home. Reddy has removed to federal court the second time, and filed for bankruptcy twice in this action to invoke the automatic stay on litigation during bankruptcy. This undoubtedly has caused needless expense to the other party and the courts—both state and federal.

Finally, no other sanction would prove as effective at keeping Reddy from delaying proceedings.

Thus, all five factors weigh in favor of barring Reddy or any other party from removing this action to federal court in the future. The Court enters an order barring Reddy or any other related party from filing another notice of removal for this state court eviction action unless such person first files a motion on the docket of this case seeking leave to file a notice of removal. If Reddy or any related party chooses to file a notice of removal without first seeking and receiving permission from this Court to do so, then they may be subject to penalties for contempt of court.

### III. CONCLUSION

For the reasons described herein, Deutsche Bank's motion to remand is GRANTED IN PART and DENIED IN PART. The Court remands this action back to the Connecticut Superior Court (Housing Division), Judicial District of Stamford/Norwalk. Notwithstanding the ordinary 10-day waiting period under D. Conn. L. Civ. R. 83.7, the Clerk of Court shall forthwith remand this action.

**\*5** The Court further ORDERS that Reddy and/or any related party may not remove this action to federal court unless Reddy or such related party first files a motion for leave to file a notice of removal on the docket of this federal court case (No. 3:23-cv-979 (SVN)) and unless the Court grants the motion to allow the filing of a notice of removal.

**SO ORDERED** at Hartford, Connecticut, this 29th day of November, 2023.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8253767

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 26 of 88

Deutsche Bank National Trust Co. as Trustee for Morgan Stanley Mortgage L...

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Memorandum of Law in Support of Motion to Remand**<br>DEUTSCHE BANK NATIONAL TRUST COMPANY, Plaintiff, v. Walter REDDY, III, Defendant.<br>2023 WL 11922931 | — | D.Conn. | Sep. 13, 2023 | Motion |
| **2.  Docket 3:23-CV-00979**<br>Deutsche Bank National Trust Company v. Reddy | — | D.Conn. | July 24, 2023 | Docket |

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 28 of 88

Meghila, LLC v. Chalek, Not Reported in Fed. Supp. (2025)

2025 WL 436677

2025 WL 436677
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

MEGHILA, LLC, Plaintiff,
v.
Myriam CHALEK; Carzell Benton;
Djahida Chalek, Defendants.

24-CV-8986 (LTS)
|
Signed January 13, 2025

**Attorneys and Law Firms**

Carzell Benton, New York, NY, Pro Se.

ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

**\*1** Carzell Benton, who is appearing *pro se*, filed this Notice of Removal. He seeks to remove an appeal pending in the Appellate Division, First Department, to this Court. *See Meghila, LLC v. Chalek*, No. 158373/21 (1st Dept.). For the reasons set forth below, the action is remanded.

**STANDARD OF REVIEW**

A defendant in a state court action may remove a matter to federal district court if the district court has original jurisdiction of the action. 28 U.S.C. § 1441(a). To remove a state-court action to a federal district court:

> [a] defendant ... shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings,

and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). The right of removal is "entirely a creature of statute," and the "statutory procedures for removal are to be strictly construed." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002). A federal district court may *sua sponte* remand an action within 30 days of the filing of the notice of removal for a procedural defect, or at any time for a lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 131-33 (2d Cir. 2006).

**BACKGROUND**

Carzell Benton is the only signatory to this Notice of Removal. He indicates that, in an eviction proceeding to which he was not a party, *Meghila, LLC v. Chalek*, No. 158373/21, the Supreme Court of the State of New York, New York County, entered judgment against Myriam Chalek. A copy of the judgment, attached to the Notice of Removal, makes clear that the underlying action was for "recovery of unpaid rent and ejectment," and that judgment was entered "against Defendant Myriam Chalek in the sum of $198,863.64." (ECF 1 at 14.)

Benton apparently was a co-occupant of the premises at issue. He is listed as an appellant in the caption of documents filed in the Appellate Division, First Department, in connection with an appeal from the judgment. (*Id.* at 18, 21.)

Benton seeks to "remove" the pending state court appeal to this court. He argues that the Appellate Division has violated the constitutional rights of "the alleged defendants," by which he appears to mean himself and Myriam Chalek. (ECF 1 at 1-2.) Attached to the complaint is a June 25, 2024 decision of the Appellate Division, granting a stay of eviction on condition that appellants pay $8,000 monthly for ongoing use and occupancy of the premises and post a bond of $198,864.64. (*Id.* at 21-22.) Benton argues that removal is proper because the Appellate Division violated his constitutional rights, among other things, by making the stay of eviction conditional on payment.

Benton further argues that removal of the appeal to federal court is proper based on diversity jurisdiction. He states that Defendants "are domiciled in New York and possess different

Meghila, LLC v. Chalek, Not Reported in Fed. Supp. (2025)
Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 29 of 88
2025 WL 436677

nationalities, contributing to the diversity of citizenship required for federal jurisdiction." (*Id.* at 5.) Plaintiff is alleged to be an "artificial person ... operating out of New Jersey." (*Id.*)

**\*2** Benton also attaches to the Notice of Removal a document titled, "The Moorish Divine and National Movement of the World," and an "Affidavit of Indigency." (*Id.* at 10-11.)

Benton recently filed a bankruptcy proceeding, and the Bankruptcy Court issued an order that included the following description:

> [Meghila, LLC ("Landlord")] is the owner of condominium unit PH3D, which is located at 1600 Broadway, New York, New York 10027. On May 9, 2020, the Landlord and Myriam Chalek ("Chalek") signed a lease pursuant to which [Carzell Benton ("Debtor")] and Chalek (... the "Occupants") took possession of the Property. The Occupants have apparently never made a rent payment, and the Landlord commenced eviction proceedings. On October 17, 2023, the Landlord obtained an Order and Judgment of Possession (the "Eviction Judgment"), entitling the Landlord to evict the Occupants, as well as entitling the Landlord to collect $198,863.63 in unpaid rent. Following the Eviction Judgment, the Occupants filed a series of bankruptcies to stay the eviction.

*In re Benton*, 662 B.R. 517, 520 (Bankr. S.D.N.Y. 2024) (citations omitted). [1] The Bankruptcy Court further noted that Benton "is not a tenant under the lease." *Id.* at 521.

[1]  Benton has filed a separate suit in federal court against Judge Goetz, who presided over the eviction proceeding (Index Number 158373/2021), *see Benton v. Goetz*, No. 24-CV-3649 (S.D.N.Y. July 31, 2024), and has twice sued Meghila LLC

and others connected with the premises, *Benton v. Cidambi*, No. 1:24-CV-2968 (LTS) (S.D.N.Y. June 27, 2024); *Benton v. Cidambi*, No. 24-CV-5489 (LTS), 2024 WL 4635429, at \*1 (S.D.N.Y Oct. 28, 2024).

## DISCUSSION

Removal of this pending state court appeal is improper. As an initial matter, the removal statutes provide for removal by a defendant, not an appellant. *See* 28 U.S.C. § 1441 (a civil action brought in a State court "may be removed by the defendant or the defendants"); 28 U.S.C. § 1446 ("A defendant or defendants desiring to remove any civil action from a State court shall file ... a notice of removal ....").

Here, Carzell Benton has filed a notice of removal of a pending appeal in which he is an appellant. The general removal statutes do not authorize an appellant to remove an action to federal court. "[O]nly defendants have the authority to remove an action to federal court." *Murray v. Deer Park Union Free Sch. Dist.*, 154 F. Supp. 2d 424, 426 (E.D.N.Y. 2001).

Moreover, removal is improper once the state court has entered judgment. "[A] claim that has been reduced to a final judgment in the state court cannot be made subject to relitigation through removal." *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 774 (2d Cir. 1988). "[R]emoval is not possible where the case reached final judgment in state court." *Snelgrove v. LeBlanc*, No. 20-CV-146, 2020 WL 7647026 (D. Vt. Nov. 5, 2020).

Federal courts, with a limited exception not applicable here, do not review state court judgments. *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("28 U.S.C. § 1331 is a grant of original jurisdiction" that "does not authorize district courts to exercise appellate jurisdiction over state-court judgments."); *Credit One, LLC v. Head*, No. 3:09-CV-1852 (MRK), 2010 WL 3058916, at \*1 (D. Conn. Jan. 11, 2010) (rejecting the *pro se* plaintiff's attempt to remove a closed state action and explaining that federal district courts "do not sit as courts of appeal over state court judges"). [2] Thus, Benton's remedy, if any, is to continue to pursue any available appeals in state court. If he disagrees with a final decision of the Appellate Division, he can seek discretionary review in the New York Court of Appeals.

Case 6:26-cv-00070-MAD-MJK     Document 25     Filed 03/17/26     Page 30 of 88

**Meghila, LLC v. Chalek, Not Reported in Fed. Supp. (2025)**

2025 WL 436677

2      The exception to this rule is that the Supreme Court of the United States has jurisdiction of appeals from a final judgment of the highest state court. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983) (holding that, under 28 U.S.C. § 1257, federal court jurisdiction of appeals from final state-court judgments "may be had only in this [U.S. Supreme] Court").

**\*3** The defendant bears the burden of establishing that removal is proper." *United Food & Commercial Workers Union, Loc. 919 v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir. 1994). Here, removal of the pending appeal is not proper because this Court cannot review the state court judgment. The action is therefore remanded to the Appellate Division, First Department. *See Mitskovski,* 435 F.3d at 131 (noting that the Circuit has "interpreted section 1447(c) to authorize a remand for either a procedural defect asserted within 30 days of the filing of notice of removal or a lack of subject matter jurisdiction"). [3]

3      The Notice of Removal also does not show that the Court has subject matter jurisdiction of this action. The underlying landlord-tenant matter relies on state law, and a federal defense or counterclaim cannot be the basis for federal question jurisdiction. *See Fax Telecommunicaciones Inc. v. AT & T,* 138 F.3d 479, 486 (2d Cir. 1998) (removal based on federal question jurisdiction "is proper only if the federal question appears plainly on the face of a 'well-pleaded complaint' "). Moreover,

as a domiciliary of the forum state, Benton cannot remove an action on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(2).

In addition, Benton has previously been warned that, if he abuses the privilege of proceeding IFP by pursing further duplicative or vexatious litigation in this Court, he may be ordered to show cause why he should not be barred from filing new actions IFP without prior permission. *See Benton,* 2024 WL 4635429, at \*1 (relying on 28 U.S.C. § 1651). That warning remains in effect.

### CONCLUSION

Because removal is improper, the appeal is remanded, under 28 U.S.C. § 1447(c), to the Appellate Division, First Department. The Clerk of Court is directed to send a copy of this order to that court and to close this action. All pending matters are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 436677

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

**History**

There are no History results for this citation.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8528552

2023 WL 8528552
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Derek WILLIAMS; Williams Derek
Irrevocable Living Trust, Plaintiffs,
v.
AUDUBON TP4 LLC, et al., Defendants.

23-CV-8758 (LTS)
|
Signed December 5, 2023

**Attorneys and Law Firms**

Derek Williams, New York, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

 **\*1** Plaintiff Derek Williams, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, on behalf of himself and the Williams Derek Keith Irrevocable Living Trust ("the Trust"). He asserts that Defendants violated his rights in a holdover proceeding in the Civil Court of the City of New York, County of New York, Housing Part ("Civil Court"). Plaintiff requests preliminary injunctive relief and a temporary restraining order ("TRO"), seeking to enjoin the state court's allegedly unlawful eviction order. (ECF 3.) By order dated October 6, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court denies Plaintiff's request for preliminary injunctive relief and a temporary restraining order and dismisses this action.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff Derek Williams brings this action on behalf of himself and the Trust, seeking relief from an allegedly unlawful order of eviction issued by Judge Jack Stoller in the Civil Court action. He invokes federal question jurisdiction, cites to 42 U.S.C. § 1983 and other statutory provisions, and asserts that Defendants have violated "conditional rights, human rights, [and] property rights." (ECF 1, at 8.) [1] Plaintiff sues the following: (1) Audubon TP4 LLC ("Audubon"), his landlord; (2) Ann Roberts, an attorney representing Audubon; (3) Jack K. Stoller, the judge presiding over the Civil Court case; (4) Thomas J. Bia, a City Marshal; (5) TaTanisha D. James, a judge in the New York Supreme Court, Appellate Term, First Department ("Appellate Term"); (6) J. Delacruzzapata, an officer from the New York City Police Department ("NYPD"); (7) Jonathen, a person who assisted with the eviction; (8) Richard Bianrosa, an NYPD officer; (9) Christopher Spring, Audubon's Property Executive; (10)

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                    1

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 33 of 88

Williams v. Audubon TP4 LLC, Not Reported in Fed. Supp. (2023)

2023 WL 8528552

Dominick Matthew Giannotto, an attorney; (11) Adolfo Carrion, the Commissioner of the New York City Department of Housing Preservation and Development ("HPD"); and (12) Rowan D. Wilson, the Chief Judge of the New York Court of Appeals. Plaintiff seeks restoration of his tenancy, reimbursement of court expenses, money damages, and injunctive relief, including the arrest of the "wrongdoers" for "security fraud/identity theft." (*Id.* at 13.)

[1]    Plaintiff writes using irregular capitalization. For readability, the Court uses standard capitalization when quoting from the amended complaint. All other grammar, spelling, and punctuation are as in the original unless otherwise indicated.

**\*2**  The following information is taken from the complaint. Plaintiff, a participant in the federally subsidized Section 8 Housing Choice Voucher Program, resided in an apartment located in a building owned by Audubon at 2321 Adam Clayton Powell Boulevard in New York, New York. According to Plaintiff, the tenant on the lease agreement was the Trust. On November 3, 2023, Roberts, on behalf of Audubon, filed a holdover petition against Plaintiff in the Civil Court, asserting that Plaintiff had failed to recertify his Section 8 tenancy and seeking rent arrears in the amount of $105,987.62.[2]  On July 26, 2023, Judge Stoller held a bench trial, which Plaintiff contends was an "improper court proceeding resulting in an inquest hearing." (*Id.* at 12.) Judge Stoller allowed Giannotto, a "volunteer attorney without standing," to appear on behalf of Roberts; Plaintiff also alleges that a witness perjured himself with "false testimony." (*Id.* at 12, 18) That same day, Judge Stoller issued a decision granting Audubon's request for a warrant of eviction against Plaintiff. (*Id.* at 34-36.) That order was based on certain "visual evidence," which was admitted without being "validated or inspected." (*Id.* at 12.)

[2]    Plaintiff attaches to the complaint multiple documents from the state court action, including a copy of the holdover petition. The petition is date-stamped August 7, 2023, indicating it was filed on that date in the Civil Court. (ECF 1, at 37-38.)

Plaintiff appealed the eviction order to the Appellate Term, but on September 8, 2023, Judge James of that court denied the appeal without a reason. On September 12, 2023, City Marshal Bia appeared to execute the warrant of eviction, but upon being shown a lease bearing the name of the Trust, he left. On September 28, 2023, however, Defendant Bia returned with Defendants Officer Bianrosa and

Officer Delacruzzapata and unlawfully evicted Plaintiff and his possessions from the apartment with the assistance of Defendant Jonathen.

Plaintiff brings this action contending that both the bench trial and order of eviction were "fraudulent" as he is not the tenant of the apartment, that "the rightful owner to the unit" is the Trust (*Id.* at 1.) He asserts that the state court proceedings violated his constitutional rights and he seeks an order "declaring [his] continued and prolonged eviction unlawful" and directing Audubon "to release" the apartment back to the Trust. (*Id.* at 2.) As well as citing to Section 1983, Plaintiff references multiple statutory provisions for relief, including 15 U.S.C. § 1635, 28 U.S.C. § 1446, 28 U.S.C. § 224, and 28 U.S.C. § 1651.

## DISCUSSION

### A. Proceeding *Pro Se* on Behalf of a Trust

Corporations, nonprofit organizations, and other artificial entities cannot proceed *pro se*. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) (noting that "lower courts have uniformly held that 28 U.S.C. § 1654, providing that "parties may plead and conduct their own cases personally or by counsel," does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney") (citations omitted); *see also Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (noting that "it is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*"). "A trust is deemed an artificial entity for the purposes of the rule barring a nonlawyer trustee from representing the interests of the trust." *Bell v. S. Bay Eur. Corp.*, 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007). Thus, the claims brought on behalf of the Trust are dismissed without prejudice to the Trust retaining counsel and initiating its own action.

### B. Complaint Relationship to State Court Action

Plaintiff brings this action seeking injunctive relief from the Civil Court's eviction order and immediate restoration of the Trust's alleged tenancy. It is unclear from Plaintiff's complaint the status of the state court action. Whether the holdover proceeding is ongoing or has terminated, however, the Court is barred from granting Plaintiff's request for relief.

#### 1. *Younger* abstention

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 34 of 88

Williams v. Audubon TP4 LLC, Not Reported in Fed. Supp. (2023)
2023 WL 8528552

**\*3** To the extent that Plaintiff is asking the Court to grant injunctive or declaratory relief with respect to matters in an ongoing action in the Civil Court, the Court must abstain from hearing his claims. The *Younger* abstention doctrine cautions federal courts against enjoining or otherwise interfering in ongoing state proceedings. *See Sprint Comms., Inc. v. Jacobs*, 571 U.S 69, 77–78 (2013) (defining "*Younger's* scope"); *see generally Younger v. Harris*, 401 U.S. 37, 43–45 (1971). *Younger* abstention is appropriate in three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 571 U.S. at 72-73.

In *Sprint*, the United States Supreme Court held that, among other circumstances, the *Younger* abstention doctrine must be applied to federal-court actions that would, in the absence of this doctrine, intervene in state-court civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 72-73. When a plaintiff "seek[s] injunctive relief relating to the same property that is the subject matter of the underlying state court action[,] [this] *Sprint* prong applies." *Abbatiello v. Wells Fargo Bank, N.A.*, No. 15-CV-4210, 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015); *see Clark v. Bloomberg*, No. 10-CV-1263, 2010 WL 1438803, at *2 (E.D.N.Y. Apr. 12, 2010) (holding that *Younger* abstention doctrine precludes federal district court from staying pending state-court foreclosure and eviction proceedings because "both concern the disposition of real property and hence implicate important state interests, and there is no reason to doubt that the state proceedings provide [the plaintiff] with an adequate forum to make the arguments he seeks to raise in this court").

Plaintiff's complaint appears to be a request that this Court intervene in the state court action by nullifying the eviction order and restoring the Trust's tenancy. If the Civil Court's eviction proceedings are ongoing, this conduct that would implicate the state's interest in enforcing the orders and judgments of its courts. To the extent Plaintiff is seeking relief from this Court in an ongoing state court action, *Younger* abstention applies and bars the relief Plaintiff is seeking.

### C. *Rooker-Feldman* Doctrine

To the extent that Plaintiff challenges the final outcome of any of his state court proceedings, his claims are barred under the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts from reviewing final judgments of the state courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). The *Rooker-Feldman* doctrine applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

The Court does not have authority to grant Plaintiff relief from a state court action that has been terminated. To the extent Plaintiff is asking this Court to review or reject the holdings of his previous state court proceedings that he alleges have caused him injury, such claims are barred by the *Rooker-Feldman* doctrine and are dismissed.

### D. Section 1983

**\*4** Even if Plaintiff's claims arising out of the holdover proceedings were not barred by the *Younger* abstention or *Rooker-Feldman* doctrines, his assertions that Defendants violated his rights under 42 U.S.C. § 1983 must still be dismissed. Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a Section 1983 claim, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. Judicial and Quasi-Judicial Immunity

The Court must dismiss Plaintiff's Section 1983 claims against Civil Court Judge Jack Stoller, Appellate Term Judge TaTanisha James, Chief Judge Rowan Wilson of the Court of Appeals, City Marshal Bia, Officer Bianrosa, Officer Delacruzzapata, and Jonathen.[3] Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*,

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 35 of 88
Williams v. Audubon TP4 LLC, Not Reported in Fed. Supp. (2023)
2023 WL 8528552

502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

3     It is clear that the judges and the City Marshal are state actors subject to Section 1983 liability. *See, e.g.*, *West*, 487 U.S. at 50 ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Plaintiff does not, however, allege sufficient facts concerning Jonathen's status as a state actor, only alleging that he was a person who assisted with his eviction from the apartment. For the sole purpose of this order, the Court presumes Jonathen's status as a state actor and analyzes whether Plaintiff has established that he was deprived of a federal right with respect to the eviction. The Court notes, however, that if Jonathen is not a state actor, as analyzed below, he cannot be subject to Section 1983 liability.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Absolute judicial immunity has been extended to "some officials who are not judges but who perform functions closely associated with the judicial process." *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987) (citation and internal quotation marks omitted). Courts have generally found that law enforcement officials are protected by quasi-judicial immunity when performing discretionary acts of a judicial nature which are essential to the judicial process, such as the execution of court orders. *See Cleavinger v.*

*Saxner*, 474 U.S. 193, 200 (1985) (holding that probation officers are entitled to quasi-judicial immunity for carrying out a court order); *Harley v. Guida*, No. 19-CV-6152, 2022 WL 4539510, at *4 (E.D.N.Y. Sept. 28, 2022) (City Marshal is immune from suit for executing a facially valid eviction warrant); *Bowers v. U.S.*, 931 F. Supp. 2d 358, 367 (D. Conn. 2013) ("Several district courts in this Circuit have found the execution of valid court orders to entitle sheriffs and others to absolute quasi-judicial immunity.") (collecting cases); *Morris v. Katz*, No. 11-CV-3556, 2011 WL 3918965, at *4 (E.D.N.Y. Sept. 4, 2011) (holding that where plaintiff "seeks to hold [City Marshal] liable based upon his execution of a facially valid warrant of eviction in accordance with his duty to carry out mandates of the court, the action against him must be dismissed on the basis of quasi-judicial immunity"); *Maldonado v. New York Cnty. Sheriff*, 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) ("[P]ersons who faithfully execute valid court orders are absolutely immune from liability for damages in actions challenging conduct authorized by the order.") (citation omitted).

**\*5** Plaintiff does not allege any facts showing that Judges Stoller, James, or Wilson acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because the Court understands Plaintiff to be suing Judges Stoller, James, and Wilson for "acts arising out of, or related to, individual cases before [them]," they are immune from suit for such claims. *Bliven*, 579 F.3d at 210. Furthermore, as Bia was acting within the scope of his authority in executing the Civil Court's facially valid eviction warrant, and Bianrosa, Delacruzzapata, and Jonathen were assisting him with that process, they are entitled to quasi-judicial immunity.

The Court therefore dismisses Plaintiff's claims for money damages against Stoller, James, Wilson, Bia, Bianrosa, Delacruzzapata, and Jonathen because he seeks monetary relief against defendants who are immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, the claims are frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the in forma pauperis statute].").

**2. Private Parties**

Plaintiff's claim against Audubon, Roberts, Spring, and Giannotto must also be dismissed. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation,

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 36 of 88
Williams v. Audubon TP4 LLC, Not Reported in Fed. Supp. (2023)
2023 WL 8528552

custom or usage." 42 U.S.C. § 983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Defendants Audubon, Roberts, Spring, and Giannotto are private parties who are not alleged to work for any state or other government body, Plaintiff has not stated a claim against these defendants under Section 1983.

### 3. Personal Involvement

The Court also dismisses Plaintiff's claims against Commissioner Carrion. To state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.,* 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official ...." *Tangreti v. Bachmann,* 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not allege any facts showing how Commissioner Carrion was personally involved in the events underlying his claims. Plaintiff's claims against Carrion are therefore dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. Removal of State Court Holdover Proceeding

Plaintiff cites to 28 U.S.C. § 1446, which provides the procedure for removal of civil actions, and suggests that he would like to remove to this court the Civil Court's holdover action. To the extent Plaintiff's complaint could be read as a notice of removal, it suffers from procedural defects, and Plaintiff does not establish that this Court has subject matter jurisdiction of the holdover action.

### 1. Timeliness

**\*6** As an initial matter, a notice of removal must be filed within 30 days of the defendant's receipt of a pleading, motion, or other paper indicating grounds for removal. 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). "[T]he 30-day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff serves the defendant with an initial pleading or other document" in the case that demonstrates removability. *Cutrone v. Mortg. Elec. Registration Sys., Inc.,* 749 F.3d 137, 148 (2d Cir. 2014).

Plaintiff alleges that the holdover petition was filed in the state court on November 3, 2022. (ECF 1, at 12.) He does not allege when he was served with the petition, but he references multiple proceedings that occurred more than 30 days before he filed this action, including the alleged unlawful bench trial that occurred on July 26, 2023. It therefore appears that Plaintiff's attempted removal of the state court action is untimely. [4]

4       Plaintiff makes no argument that it could not be ascertained until recently that the case was removable. 28 U.S.C. § 1446(b)(3).

### 2. Subject matter jurisdiction

Moreover, a defendant in a state court action may remove a matter to a federal district court only if the district court has original jurisdiction of the action. *See* 28 U.S.C. § 1441(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 591 (2005) ("The Supreme Court has interpreted [28 U.S.C.] § 1441 to prohibit removal unless the entire action, as it stands at the time of removal, could have been filed in federal court in the first instance."). Removal based on federal question jurisdiction is proper "only if the federal question appears plainly on the face of a 'well-pleaded complaint.' " *Fax Telecomm. Inc. v. AT&T,* 138 F.3d 479, 486 (2d Cir. 1998).

Here, Plaintiff does not allege any facts suggesting that the Court has original jurisdiction of the state court action. The petition presents a simple landlord-tenant dispute over nonpayment of rent, a matter of which federal courts do not have jurisdiction. *See Ally v. Sukkar,* 128 F. App'x

Williams v. Audubon TP4 LLC, Not Reported in Fed. Supp. (2023)

2023 WL 8528552

194, 195 (2d Cir. 2005) (amended summary order) ("[A] landlord-tenant dispute [is one] over which the federal courts simply have no [federal question] jurisdiction."); *United Mut. Houses, L.P. v. Andujar*, 230 F. Supp. 2d 349, 354 (S.D.N.Y. 2002) (noting that "the landlord-tenant relationship is fundamentally a matter of state law" and that "[t]ime and again, district courts have disclaimed jurisdiction over landlord-tenant disputes" (citation and quotations marks omitted)). Furthermore, the Court lacks diversity jurisdiction of the state court matter because all of the parties appear to be residents of the State of New York. *See* 28 U.S.C. § 1332(a).

### 3. Action adjudicated in state court

As noted above, it is not clear from Plaintiff's complaint whether the Civil Court case has been terminated. When a state court has entered final judgment in an action, that case cannot be removed to federal court. *See Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 774 (2d Cir.1988) (holding that granting permission to remove a case after entry of a final state-court judgment "would be a perversion of the removal process"); *Murray v. Deer Park Union Free Sch. Dist.*, 154 F. Supp. 2d 424, 426 (E.D.N.Y. 2001) ("[A] final judgment ... not be removed to this Court so that the plaintiff can relitigate issues already decided by the state court."); *Credit One, LLC v. Head*, No. 09-CV-1852, 2010 WL3058916, at *1 (D. Conn. 2010) (rejecting *pro se* plaintiff's attempt to remove closed state action and explaining that federal district courts "do not sit as courts of appeal over state court judges"). Plaintiff may not seek the removal of a state court action in which a final judgment has been entered.

**\*7** For the reasons stated, removal of this action is improper. The Court need not remand this improperly removed action, which may have already been adjudicated in the state court.

### F. Remaining Statutory Claims

Plaintiff references many other statutory provisions in the complaint, including 15 U.S.C. § 1635, a provision of the Truth in Lending Act ("TILA") concerning the right of rescission; 28 U.S.C. § 2241, a provision to bring a petition for a writ of *habeas corpus*; and 28 U.S.C. § 1651, the All Writs Act. Because Plaintiff does not allege any facts indicating how these statutes are applicable to his claims, the Court finds that he has failed to state claims under these laws on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(iii)

### G. Leave to Amend is Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

### CONCLUSION

The Court dismisses the complaint for the reasons set forth above. All other pending matters in this action are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8528552

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:23-CV-08758**<br>Williams v. Audubon TP4 LLC et al | — | S.D.N.Y. | Oct. 05, 2023 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 6796770

⚠ KeyCite Overruling Risk

Overruling Risk   Exxon Mobil Corp. v. Saudi Basic Industries Corp.,   U.S., March 30, 2005

2005 WL 6796770
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

CITIBANK, N.A., Plaintiffs,
v.
Lidia SWIATKOSKI, Michael Swiatkowski, Betina Swiatkowski, American Express Travel Related Services Co. Inc., American Express Centurion Bank, Susan Bailey, and John Doe and/or Jane Doe # 1–10 Inclusive, Lidia Swiatkoski, and Michael Swiatkowski, Plaintiffs,
v.
The State of New York, as an individual, George Pataki and George Pataki as the Governor of the State of New York, ELliot Spitzer and Elliot Spitzer as the New York State Attorney General, Zelda Jonas, Citibank and as Citicorp and as Citi Mortgage and (Cmi) Servicing Agent Carl Levinson, Individually and as Ceo, Garry R. Seligson and Garry R. Seligson as V.P. & General Counsel, Legal Dept., Jaime R. Hutchison, Teresa MEtcalf, David Gallo Esq., and Manton, Sweeney, Gallo, Reich & Bolz, LLP, ROsemarie A. Klie Esq., RAshel M. Mehlman Esq., William J. Corbett Esq, jointly and severally and "John Doe" Number 1 Through 100, These Names Being Fictitious, the Actual Names and Address Being Unknown; Each Named Party Individually and Jointly And in Their Official Capacity, If Any, Defendants.

Nos. 04–cv–5122 (ADS)(ARL),
05–cv–0178 (ADS)(ARL).
|
March 18, 2005.

**Attorneys and Law Firms**

Lidia Swiatkowski, Massepequa, NY, pro se.

Michael Swiatkowski, Massepequa, NY, pro se.

Manton, Sweeney, Gallo, Reich & Bolz, LLP, by: Rashel Mehlman, Esq., of Counsel, Rego Park, NY, New York State

Attorney General, by: Ralph Pernick, Assistant Attorney General, of Counsel, Mineola, NY, for the Plaintiffs and Defendants.

**ORDER**

SPATT, District Judge.

**\*1** Currently pending are two cases brought to this Court by Lidia Swiatkoski and Michael Swiatkowski (collectively "Swiatkowski"). Case number 04–5122 is a foreclosure action, originally filed by Citibank on January 17, 2003 in Supreme Court, Nassau County, New York, (Index No. 03–1197) (the "Foreclosure Action"), which was removed to this Court on November 24, 2004 by Swiatkowski. Case number 05–178 (the "2005 Action") was filed by Swiatkowski on January 12, 2005 against various parties involved in the Foreclosure Action, including: (1) the State of New York and—in both their individual and official capacities—its Governor George Pataki, its Attorney General Elliot Spitzer, and the Honorable Zelda Jonas, the New York State Supreme Court Justice presiding over the Foreclosure Action; and (2) Citibank and its CEO Carl Levinson, its V.P. & General Counsel Garry R. Seligson, and Manton, Sweeney, Gallo, Reich & Bolz, LLP, the law firm that represents it in the Foreclosure Action along with its attorneys David Gallo, Esq., Rosemarie A. Klie, Esq., Rashel M. Mehlman, Esq., and William J. Corbett, Esq.

On January 17, 2003, Citibank instituted the Foreclosure Action by filing a summons and complaint in Supreme Court, Nassau County. Swiatkowski filed an answer alleging that the state court did not have jurisdiction because of a pending federal action, *Swiatkowski v. Bank of America,* No. 02–cv–03981(ADS)(ARL) (the "2002 Action"). On August 2, 2003, this Court dismissed the 2002 Action for lack of subject matter jurisdiction under the Rooker–Feldman abstention doctrine. On June 17, 2004, the United States Court of Appeals for the Second Circuit affirmed that decision. *Swiatkowski v. Bank of America, NT & SA,* 103 Fed.Appx. 431, 432, 2004 WL 1367927, \*1 (2nd Cir.2004) ("It is well settled that inferior federal courts lack jurisdiction to review state court decisions.").

On January 29, 2004, the state court granted a motion by Citibank for summary judgment in the Foreclosure Action. On November 10, 2004, Swiatkowski moved by order to show cause in state court to vacate the judgment of foreclosure. That motion was denied. On November 22, 2004,

Citibank, N.A. v. Swiatkoski, Not Reported in F.Supp.2d (2005)
2005 WL 6796770

Swiatkowski filed a notice of appeal in the Foreclosure Action with the Appellate Division, Second Department. Two days later, on November 24, 2004, Swiatkowski filed a petition to remove the Foreclosure Action to this Court because "the state court cannot, is unwilling, or that an extrajudicial climate exists that is prejudicial to petitioner's civil rights and the enjoyment of her constitutional rights because racial, ethnic, or religious or other bias." Swiatkowski's Petition at 2–3.

Citibank brought this order to show cause seeking to remand the Foreclosure Action back to the state court. On March 15, 2005, the Court heard oral argument on the motion to remand the case back to state court. At oral argument and in their submissions to the Court, the Swiatkowskis continually attack the decisions of the Supreme Court, Nassau County. The Swiatkowskis urge this Court to review the decisions of the Supreme Court, Nassau County, and usurp the authority of the Appellate Division, Second Department, which has not, as of yet, decided the Swiatkowskis' appeal.

**\*2** The federal courts are courts of limited jurisdiction. The New York State supreme courts are courts of general jurisdiction, and the presumption is that they have subject matter jurisdiction over a particular controversy unless a showing is made to the contrary. On the other hand, the federal courts are only empowered to hear cases specifically authorized by the Constitution or statute. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). As such, "it would not simply be wrong but indeed would be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction...." 13 Fed. Prac. & Proc. Juris.2d § 3522.

It is well-settled that the party seeking to invoke the jurisdiction of a federal court, unlike the state court, must demonstrate that the case is within the competence of that court. *Kokkonen,* 511 U.S. at 377, 114 S.Ct. at 1675, 128 L.Ed.2d 391 (1994). The Swiatkowskis have not met this burden. From the face of the petition and the procedural history of the case, it is clear that this Court lacks subject matter jurisdiction under the Rooker–Feldman abstention doctrine. See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature," *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir.1995), and "federal review, if any,

can occur only by way of a certiorari petition to the Supreme Court," *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir.1996). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998).

A federal court must remand a case if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction...." 28 U.S.C. § 1447. Here, an appeal is pending in the Foreclosure Action before the Appellate Division, Second Department. In addition, the Swiatkowskis have brought nothing forward, other than attacks on the state court decision in the Foreclosure Action that would grant this Court an independent basis of jurisdiction. These attacks on the state court decision can be raised in the appeal before the Appellate Division. This Court cannot review the decisions of the New York State Supreme Court. Immediate review of the New York State Supreme Court can only be exercised by the Appellate Division, where the Swiatkoski's appeal is pending. Therefore, this case is remanded back to the state court for lack of subject matter jurisdiction.

For the same reasons, the Court lacks subject matter jurisdiction in the latest case filed by the Swiatkowskis. In the 2005 Action, Swiatkowski filed a 124–page, 364–paragraph complaint encompassing sixteen causes of action against various parties that are involved in the Foreclosure Action, including the New York State Supreme Court Justice presiding over the Foreclosure Action, Citibank, and its attorneys.

**\*3** The Rooker–Feldman doctrine prohibits a district court from handling claims that are "inextricably intertwined" with state court determinations. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). A claim is inextricably intertwined with a state court judgment when "at a minimum, ... a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), ... [and] the claim ... would be barred under the principles of preclusion." *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002) (internal quotations and citation omitted). In addition, a plaintiff cannot circumvent Rooker–Feldman by recasting her claim as a federal civil rights violation. See *Davidson v. Garry,* 956 F.Supp. 265, 268–69 (E.D.N.Y.1996).

After hearing oral argument and reviewing the submissions of the parties, there is no doubt that the Swiatkowskis' claims arise from their mortgage foreclosure proceedings in state

**Citibank, N.A. v. Swiatkoski, Not Reported in F.Supp.2d (2005)**
2005 WL 6796770

court. Despite the fact that the claims are cast in terms of civil rights violations, Swiatkowski's purpose in filing this action in federal court is clearly to avoid the results of the state court rulings. This latest case, apparently, demonstrates their dissatisfaction with the state court proceedings. *See Pal v. Garvey,* 1998 U.S. Dist. LEXIS 11565, at * 1 (S.D.N.Y., July 29, 1998) ("[D]ismissal warranted where complaint alleged state court exceeded its constitutional authority, made various evidentiary errors, deprived plaintiff of right to counsel, and deprived plaintiff of other unspecified rights....").

Indeed, even if the actions taken by the state court were wrongful, as alleged, the orders remains in full force and effect until they are reversed or modified by an appropriate state court. Put simply, Swiatkowski cannot enter through the back door to evade the Rooker–Feldman doctrine in order to get into federal court.

For all the foregoing reasons, it is hereby

**ORDERED,** that case number 04–5122 is REMANDED to the Supreme Court, County of Nassau, New York; and it is further

**ORDERED,** that Citibank's motion for sanctions is denied; and it is further ORDERED, that the Clerk of the Court is directed to close case number 04–5122; and it is further

**ORDERED,** that case number 05–178 is dismissed for lack of subject matter jurisdiction; and it is further

**ORDERED,** that the Clerk of the Court is directed to close case number 05–178.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 6796770

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 2:05cv00178**<br>SWIATKOWSKI ET AL v. THE STATE OF NEW YORK ET AL | — | E.D.N.Y. | Jan. 12, 2005 | Docket |
| **2. Docket 2:04cv05122**<br>CITIBANK, N.A. v. SWIATKOWSKI ET AL | — | E.D.N.Y. | Nov. 24, 2004 | Docket |

**WESTLAW** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (1)**

⚠ 1.  Citibank, N.A. v. Swiatkoski
2005 WL 6796770 , E.D.N.Y. , Mar. 18, 2005

**Related References (1)**

🚩 2.  Citibank, N.A. v. Swiatkoski
395 F.Supp.2d 5 , E.D.N.Y. , Oct. 29, 2005

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 46 of 88

City of Philadelphia v. Bradley, Not Reported in Fed. Supp. (2024)
2024 WL 4755810

2024 WL 4755810
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

CITY OF PHILADELPHIA, Plaintiff,
v.
Aisha Asha BRADLEY, Defendant.

24-CV-7703 (LTS)
|
Signed October 15, 2024

**Attorneys and Law Firms**

Aisha Asha Bradley, Philadelphia, PA, Pro Se.

ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

 **\*1** Defendant, who is appearing *pro se*, has removed to this Court a 2023 civil tax action that was pending in the Court of Common Pleas of Philadelphia County, under Case No. 2305T0155.[1] The City of Philadelphia brought this action against Defendant Aisha Bradley seeking delinquent real estate taxes for a property at 800 Seffert Street in Philadelphia. Defendant previously removed this civil tax action to the United States District Court for the Eastern District of Pennsylvania, which remanded it. *See City of Philadelphia v. Bradley*, No. 24-CV-0016, 2024 WL 406757, at \*1 (E.D. Pa. Feb. 2, 2024). For the reasons set forth below, the action is remanded to the Court of Common Pleas of Philadelphia County.[2]

[1]    On the same day that Defendant brought this action, she filed two other Notices of Removal of cases pending in Pennsylvania. *City of Philadelphia v. Bradley*, No. 24-CV-7706 (LTS) (S.D.N.Y. filed Oct. 3, 2024); *City of Philadelphia v. Bradley*, No. 24-CV-7606 (LTS) (S.D.N.Y. filed Oct. 3, 2024). Defendant nevertheless references multiple state court actions in each of the Notices of Removal.

[2]    Defendant has not paid the filing fees to remove this action. Because the action is being remanded, and no *in forma pauperis* application has been submitted, the Court does not consider whether Defendant qualifies to proceed *in forma pauperis*.

**STANDARD OF REVIEW**

A defendant in a state court action may remove a matter to federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). To remove a state-court action to a federal district court:

> [a] defendant ... shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). The right of removal is "entirely a creature of statute," and the "statutory procedures for removal are to be strictly construed." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002). A federal district court may remand an action *sua sponte* within 30 days of the filing of the notice of removal for a procedural defect, or at any time for a lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 131-33 (2d Cir. 2006); *Hamilton v. Aetna Life & Cas. Co.*, 5 F.3d 642, 643-44 (2d Cir. 1993).

**DISCUSSION**

Removal of this case is improper for multiple reasons. First, a notice of removal must be filed within 30 days of the defendant's receipt of a pleading, motion, or other paper indicating grounds for removal. 28 U.S.C. § 1446(b)(1).[3] This action was already pending in the Court of Common Pleas in 2023. The Notice of Removal filed on October 3, 2024, was therefore brought well beyond the 30-day deadline, and the Court concludes that the removal of this action was untimely.

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 47 of 88

City of Philadelphia v. Bradley, Not Reported in Fed. Supp. (2024)
2024 WL 4755810

3     "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Nothing in the Notice of Removal suggests that this rule applies, and the removal in any event suffers from other incurable defects.

**\*2** Second, removal is proper only to the federal court embracing the district where the state action is pending. 28 U.S.C. § 1441(a). This action was pending in the Court of Common Pleas of Philadelphia County, which is in the Eastern District of Pennsylvania. *See* 28 U.S.C. § 118(a). Removal of a case pending in Philadelphia to the Southern District of New York is therefore improper.

Third, Defendant cannot remove this action to federal court, under 28 U.S.C. § 1441(c), on the basis of defenses or counterclaims arising under federal law. In the context of removal, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (internal quotation marks and citations omitted). A federal defense or counterclaim does not provide a basis for removal. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (holding that a federal law defense or counterclaim is not a proper foundation for removal of a case from state to federal court); *City of Rome, N.Y. v. Verizon Commc'ns Inc.*, 362 F.3d 168, 175 (2d Cir. 2004) (holding that "[t]he mere existence or invocation of a federal defense does not furnish a sufficient basis for jurisdiction to attach"). Defendant does not meet her burden, as the party seeking removal, of showing that the City of Philadelphia's civil action against her in state court for delinquent real estate taxes arises under federal law.

Moreover, Defendant was already put on notice of this deficiency. When Defendant removed this same civil tax action to the United States District Court for the Eastern District of Pennsylvania, the district court explained in the remand order that Defendant's crossclaims and counterclaims – brought against Philadelphia, the Commonwealth of Pennsylvania, several state judges, prosecutors, and state

court employees, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343 and various state and federal criminal statutes – could not provide a basis for subject matter jurisdiction. 4 *See Bradley*, No. 24-CV-0016, 2024 WL 406757, at \*2-4. Defendant was therefore on notice before she removed this action that she could not create subject matter jurisdiction for purposes of removal based on her federal defenses, crossclaims, or counterclaims. The Court therefore warns Defendant that continuing this pattern of filing improper Notices of Removal may result in an order barring her from proceeding *in forma pauperis* in this court without first obtaining permission from the court to bring such an action. See 28 U.S.C. § 1651.

4     Defendant Bradley was also unsuccessful in removing to federal court other matters pending in the Court of Common Pleas. *See City of Philadelphia v. Bradley*, No. CV 24-15, 2024 WL 406755, at \*1 (E.D. Pa. Feb. 2, 2024) (Case No. 1594); *City of Philadelphia v. Bradley*, No. 24-CV-0015, 2024 WL 406755, at \*1 (E.D. Pa. Feb. 2, 2024) (Case No. 2305T0156).

For all of these reasons, removal of this action is improper, and the Court directs that this matter be remanded to the Court of Common Pleas. 28 U.S.C. § 1447(c).

### CONCLUSION

Because removal of this action is improper, this action is remanded, under 28 U.S.C. § 1447(c), to the Court of Common Pleas of Philadelphia County.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4755810

---

End of Document       © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.    2

**History (2)**

**Direct History (2)**

> 1. City of Philadelphia v. Bradley
> 2024 WL 4755810 , S.D.N.Y. , Oct. 15, 2024

*Appeal Withdrawn by*

2. City of Philadelphia v. Bradley
2024 WL 5379025 , 2nd Cir. , Nov. 19, 2024

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

WESTLAW     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1046064

2011 WL 1046064
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jonathan EINHORN, Plaintiff,
v.
Harriett E. BEST and Patricia Best, Defendants.

No. 10 Civ. 9377(JSR)(JLC).
|
Feb. 10, 2011.

*REPORT AND RECOMMENDATION*

JAMES L. COTT, United States Magistrate Judge.

**\*1 To The Honorable Jed S. Rakoff, United States District Judge:**

Harriett E. Best and Patricia Best (the "Bests"), proceeding *pro se,* filed a notice of removal pursuant to 28 U.S.C. § 1446(a) on December 16, 2010, attempting to remove a fully litigated foreclosure action from the Supreme Court of the State of New York, New York County (Index No. 06–118791) (the "Foreclosure Action") to this Court. For the reasons set forth below, I recommend that the Court remand this action to state court.

**BACKGROUND**

On January 6, 2005, Patricia Best signed a promissory note payable to Jonathan Einhorn ("Einhorn") in the amount of $160,000, plus interest as provided therein; the note was secured by a mortgage on the property at 276 West 113th Street, New York, New York (the "Property"). Affidavit of the Defense Pursuant to the Request of the Court, dated January 21, 2011 ("Defs.' Aff."), Ex. A (Dkt. No. 4). Einhorn recorded the mortgage in the Office of the City Register in New York County on November 6, 2006, and initiated foreclosure proceedings on the Property in state Supreme Court. *Id.* Ex. D, at 1. The state court entered a judgment of foreclosure and sale on October 22, 2008, and a court-appointed referee sold the Property at a public auction to Einhorn, the highest bidder, on April 14, 2010. *Id.* Ex. D, at 1, 3–4. Einhorn assigned the property to 276 W 113 LLC ("the Company") on that date,

and the Company currently holds title to the Property under a referee's deed. *Id.* Ex. D, at 1, 3–4.

About a year after the judgment of foreclosure and sale on the Property was entered, on October 2, 2009, Patricia Best filed a voluntary petition for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Defs.' Aff. ¶ 5 & Ex. B. By Order dated March 11, 2010, the Bankruptcy Court dismissed the petition, concluding that "the debtor has caused unreasonable delay that is prejudicial to creditors by: a. failing to appear and be examined at the meeting of creditors ...; and b. failing to provide all documentation as required by the Chapter 13 trustee." Order Dismissing Chapter 13 Case, *In re Patricia Best,* No. 09–15946–mg (Bankr.S.D.N.Y. Mar. 11, 2010). (ECF No. 12).

On December 16, 2010, the Bests filed a notice of removal pursuant to 28 U.S.C. § 1446(a) (the "Notice of Removal") in this Court, asserting that the Foreclosure Action was "occurring in violation of the Uniform Commercial Code of 15 U.S.C. 1692."[1] Notice of Removal at 1 (Dkt. No. 1). Additionally, in a "Letter of Complaint" annexed to the Notice of Removal, the Bests assert that the Foreclosure Action violated, among other things, the FDCPA, the Truth in Lending Act ("TILA"), and their constitutional rights, and seek a stay of "all State and Civil Court Proceedings and Orders" until further order of this Court. *Id.* at 3. This case was referred to me for general pretrial supervision and any dispositive motions on December 21, 2010. Dkt. No. 2.

[1]    The Bests appear to be referring to the Fair Debt Collection Practices Act ("FDCPA"), Pub.L. No. 95–109, 91 Stat. 874 (1977) (codified as amended at 15 U.S.C. §§ 1692–1692*o* (2006)). Section 1692 of Title 15 sets forth the Congressional Findings and Declaration of Purpose for the FDCPA.

**\*2** In response to the Notice of Removal, by letter dated December 22, 2010, the Company informed the Court that it has a holdover proceeding pending in New York City Civil Court, Housing Part to evict the Bests and contended that the Bests purport to remove the Foreclosure Action in an attempt to have this Court stay the eviction action. Letter from William Hill Grier, Esq. to the Honorable Jed S. Rakoff, dated December 22, 2010 (the "Grier Letter") at 3.[2]

2011 WL 1046064

2 Counsel for the Company has not otherwise appeared in this action.

By Order dated January 10, 2011, I ordered the Bests to show cause why the Foreclosure Action should not be remanded to state court pursuant to 28 U.S.C. § 1447.[3] Dkt. No. 3. On January 21, 2011, the Bests submitted an affidavit and memorandum of law in response to my Order, asserting, among other things, that (1) the Foreclosure Action was invalid; (2) their removal of the Foreclosure Action was timely; and (3) the Court has subject matter jurisdiction over the action. Defs,' Aff; Memorandum of Law, dated January 21, 2011 (Dkt. No. 4).

3 I also ordered the Company, Einhorn's former counsel, Eric Hoberman, Esq., and the Bests' former counsel, Clover M. Barrett, Esq., to provide the Court with any information relevant to the Housing Court proceeding that took place on December 28, 2010 and any other information that might be relevant to this action. The Company did not provide the Court with any additional information. The Order to Mr. Barrett was returned as undeliverable. By letter dated January 21, 2011, Mr. Hoberman, who no longer represents Einhorn, confirmed that the foreclosure action was completed years earlier.

## DISCUSSION

**A. This Action Must be Remanded for Lack of Subject Matter Jurisdiction**

28 U.S.C. § 1441 provides for removal of all claims over which federal courts have "original jurisdiction." This means that "only state-court actions that originally could have been filed in federal court may be removed by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987) (citations omitted). Moreover, Section 1441(b) draws a distinction between removal of cases involving federal question jurisdiction and those involving diversity of citizenship jurisdiction; it provides as follows:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

"A district court must remand a case to state court 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.' " *Vera v. Saks & Co.,* 335 F.3d 109, 113 (2d Cir.2003) (quoting 28 U.S.C. § 1447(c)).

The "statutory procedures for removal are to be strictly construed," *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 32 (2002) (citations omitted), and "out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether Prods.,* 488 F.3d 112, 124 (2d Cir, 2007) (citation, internal alterations, and quotations omitted). Moreover, "[w]here, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994) (citations omitted).

**\*3** The Bests have failed to meet that burden here, and the Foreclosure Action must be remanded pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.[4] As an initial matter, the Bests may not remove the Foreclosure Action on the basis of diversity jurisdiction because the Bests, defendants in the action, are citizens of New York, and New York is the state in which the Foreclosure Action was brought. *See* 28 U.S.C. § 1441(b); *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 84 (2005) ("Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, *and no defendant is a citizen of the forum State* .") (emphasis added).

4 The Bests are proceeding pro se, and therefore their submissions " 'must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)); *see also*

2011 WL 1046064

*Seidemann v. Bowen,* 584 F.3d 104, 118 (2d. Cir.2009). Additionally, the Court must liberally construe the submissions and interpret them " 'to raise the strongest arguments that they suggest.' " *Diaz v. United States,* 517 F.3d 608, 613 (2d Cir.2008) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (citation and internal quotation marks omitted).

The Bests may not remove the action based on federal question jurisdiction either. Although the Bests invoke federal law—the FDCPA, TILA, and the Constitution—in their Notice of Removal and Letter of Complaint and claim that the foreclosure proceeding was unlawful, such an invocation is insufficient to establish federal question jurisdiction under 28 U.S.C. § 1331. To invoke federal question jurisdiction, the plaintiff's claims alleged in the state court action must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Moreover, under the "well-pleaded complaint" rule:

> Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance or defenses which it is thought the defendant may interpose.

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 10 (1983); *accord Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003) ("[A] case will not be removable if the complaint does not affirmatively allege a federal claim.") (citations omitted).

Here, the Bests do not assert that the complaint in the Foreclosure Action alleges a federal claim; in fact, they neither refer to the complaint nor its allegations in the documents they have submitted to the Court. Instead, the apparent gravamen of the Bests' assertion of this Court's federal question jurisdiction is that they have been treated unfairly in the Foreclosure Action. "Federal question jurisdiction is not so easily invoked. Indeed, were such a sufficient basis for federal question jurisdiction, federal courts would be inundated with removal cases by state court defendants who felt that their federal rights were not being observed by state court judges." *Citibank, N.A. v. Swiatkoski,* 395 F.Supp.2d 5, 9 (E.D.N.Y.2005) (citation omitted) (no subject matter jurisdiction over removed foreclosure action where defendant contends that removal is necessary because foreclosure action violated her federal civil and constitutional rights); *see also Kalamas v. Consumer Solutions Reo, LLC,* No. 09 Civ. 5045(SJF), 2010 WL 4811894, at *5 (E.D.N.Y. Nov. 17, 2010) (no subject matter jurisdiction over removed holdover proceeding initiated after defendant refused to leave foreclosed upon property where defendant contends that removal is necessary because holdover proceeding violates the FDCPA, TILA, and his constitutional rights).

**\*4** Additionally, to the extent the Bests assert that the Foreclosure Action and subsequent sale of the Property violated the automatic stay in Patricia Best's subsequently dismissed Chapter 13 bankruptcy proceeding, this assertion does not provide this Court with federal question jurisdiction because whether the Foreclosure Action and "referee's sale of the subject premises violated the automatic bankruptcy stay provision ... involves a straight application of the statute to the facts of this case, without the necessity for any interpretation or construction of the meaning, validity or effect of that law." *Kalamas,* 2010 WL 4811894, at *5 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700–01 (2006) and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314–15, (2005)). [5]

[5]    In any event, the claim is meritless as the state Supreme Court entered the judgment of foreclosure and sale on October 22, 2008, nearly a year before Patricia Best even filed her bankruptcy petition and thus triggered the operation of the automatic stay under 11 U.S.C. § 362(a)(1). Defs.' Aff. Ex. D, at 1. The judgment of foreclosure and sale therefore extinguished the Bests' interest in the Property on October 22, 2008 before the automatic stay went into effect. *See, e.g., Darnley v. Ameriquest Mortg. Co.,* No. 06 Civ. 4265(DLI), 2010 WL 118143, at *2 (E.D.N.Y. Jan. 8, 2010) (citing *In re Butchman,* 4 B.R. 379, 381 (Bankr.S.D.N.Y.1980)) (where chapter 13 debtor filed petition six weeks after entry of judgment of foreclosure and sale, debtor had no rights in foreclosed upon property

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 53 of 88
Einhorn v. Best, Not Reported in F.Supp.2d (2011)
2011 WL 1046064

and therefore there was no automatic stay in place preventing auction sale of property). Where, as here, "a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow." *Id.* (citations omitted). Accordingly, neither the judgment of foreclosure and sale nor the subsequent auction of the Property violated the automatic stay provisions of the Bankruptcy Code.

Finally, the *Rooker–Feldman* abstention doctrine prohibits this Court from exercising subject matter jurisdiction over this suit. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The *Rooker–Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name; cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). Federal review of foreclosure actions such as the one at issue here are routinely barred by the *Rooker–Feldman* doctrine. *See, e.g., Ashby v. Polinsky,* 328 F. App'x 20, 21 (2d Cir.2009) (summary order); *Garvin v. Bank of New York,* 227 F. App'x 7, 8 (2d Cir.2007) (summary order); *Kalamas,* 2010 WL 4811894, at *6;*Swiatkoski,* 395 F.Supp.2d at 9,*aff'd*160 F. App'x 30, 32 (2d Cir.2005).

Accordingly, because the Bests have failed to meet their burden of establishing the Court's subject matter jurisdiction over this action, I recommend that the Court remand it pursuant to 28 U.S.C. § 1447(c).

**B. The Notice of Removal Is Untimely**

Even if this Court had subject matter jurisdiction over this action, it would nevertheless have to be remanded because removal was untimely. 28 U.S.C. § 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for

relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court, and is not required to be served on the defendant, whichever period is shorter.

The Bests do not dispute that the Foreclosure Action was filed on November 6, 2006. Although the Bests make the conclusory statement that "[s]ervice in the onset of this matter was defective," Defs.' Aff. at 1, they provide no further information regarding this statement; nor do they seek to substantiate it. Moreover, there is no doubt that the Bests received a copy of the initial pleading in the Foreclosure Action as the Bests retained a lawyer on February 5, 2007 to defend them in the action. Grier Letter Ex. C, at 1. Indeed, the Amended Judgment of Foreclosure and Sale provides that Harriet Best filed an Answer and Counterclaim dated February 8, 2007. Defs.' Aff. Ex. E. Even assuming that the Bests did not receive a copy of the initial pleading in the Foreclosure Action until early January 2007 before they retained a lawyer, they did not file a Notice of Removal in this Court until December 16, 2010, years beyond the 30 days provided for in Section 1446(b). Accordingly, the Notice of Removal is not timely and the Court should remand the action to state court on this ground as well. *See, e.g., Kalamas,* 2010 WL 4811894, at *3;*Swiatkoski,* 395 F.Supp.2d at 8;*Citibank, N.A. v. McGuirl,* 888 F.Supp. 39, 41 (S.D.N.Y.1995) (rejecting defendants' attempt to relitigate propriety of foreclosure by way of removal to federal court three years after foreclosure).

**CONCLUSION**

**\*5** For the reasons stated herein, the Court should remand this action to state court.

***PROCEDURE FOR FILING OBJECTIONS***

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also*Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff and the undersigned, United

**Einborn v. Best, Not Reported in F.Supp.2d (2011)**

2011 WL 1046064

States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.***See Thomas v. Arn,* 474 U.S. 140, 154 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010) (citing *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) and *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72. If Plaintiff does not have access to cases cited herein that are reported on LEXIS/WESTLAW, he should request copies from Defendants' counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009) (noting that the Court may ask opposing counsel to provide to a *pro se* litigant copies of decisions that are available electronically).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1046064

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:10cv09377**<br>EINHORN v. BEST ET AL | — | S.D.N.Y. | Dec. 16, 2010 | Docket |

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1.  Einhorn v. Best
   2011 WL 1046064 , S.D.N.Y. , Feb. 10, 2011

*Report and Recommendation Adopted by*

2.  Einhorn v. Best
   2011 WL 1046092 , S.D.N.Y. , Mar. 21, 2011

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Sachs v. Matano, Not Reported in Fed. Supp. (2016)

2016 WL 4179792

2016 WL 4179792
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Arye SACHS, Pro Se Plaintiff,
v.
Dr. Richard A. MATANO, MD, Defendant.

CV 15-6049 (JFB) (AKT)
|
Signed 07/15/2016

**Attorneys and Law Firms**

Arye Sachs, Lindenhurst, NY, pro se.

Robert Frank Elliott, Bartlett, McDonough, Bastone & Monaghan, LLP, Mineola, NY, for Defendant.

**REPORT AND RECOMMENDATION**

A. KATHLEEN TOMLINSON, Magistrate Judge:

**\*1  I. PRELIMINARY STATEMENT**

*Pro Se* Plaintiff Arye Sachs ("Plaintiff" or "Sachs") brings this action ostensibly pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et. seq.*, the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et. seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189 and the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, against Defendant Dr. Richard A. Matano ("Defendant" or "Dr. Matano") alleging discrimination due to Plaintiff's national origin, religion, disability and indigence. Plaintiff also asserts a claim for patient abandonment. *See generally*, Complaint ("Compl.") [DE 1]. [1] Presently before the Court are (1) Defendant's motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted [2] [DE 13], and (2) Defendant's motion for sanctions [DE 14].

[1]  Plaintiff does not cite any particular section with respect to the statutes he relies upon to support his claims. However, *pro se* filings are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica,* No. 14-CV-7237, 2014 WL 7422664,

at \*3 (E.D.N.Y. Dec. 31, 2014). As such, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 50 L.Ed. 2d 251 (1976)). A court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins,* 14 F.3d 878, 890 (2d Cir. 1994)). In light of this guidance, the Court has reviewed the Complaint in conjunction with each statute Plaintiff relies upon to support his allegations and has analyzed Plaintiff's Complaint in accordance with the statutory sections that could possibly support Plaintiff's claims.

[2]  Although Defendant also brings his motion to dismiss based upon Rule 12(b)(1), Plaintiff has not interposed any state law claims in his Complaint. The Court otherwise has subject matter jurisdiction pursuant to 28 U.S.C. § 1331(a) with respect to Plaintiff's claims arising under federal law. As such, the Court will analyze Defendant's motion to dismiss based solely upon Rule 12(b)(6).

Judge Bianco referred both the motion to dismiss and the motion for sanctions to this Court for a Report and Recommendation as to whether the motions should be granted. For the reasons set forth below, the Court respectfully recommends to Judge Bianco that Defendant's motion to dismiss be GRANTED and that Defendant's motion for sanctions be DENIED.

**II. BACKGROUND**

**A. The Complaint**

The following information has been taken directly from Plaintiff's Complaint. All facts alleged by the Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to the Plaintiff as the non-moving party. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp.,* 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.,* 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

**\*2**  On Thanksgiving Day 2013, Plaintiff was admitted to Good Samaritan Hospital in West Islip, New York ("Good

2016 WL 4179792

Samaritan") for various medical issues including shortness of breath, fatigue and an ulcer on his right foot. Compl. p. 3, ¶¶ 7-8.[3] Plaintiff was examined by non-party Dr. Mancuso and, with respect to the injury to the right foot, Dr. Mancuso diagnosed Plaintiff as having osteomyelitis of the fifth toe. *Id.* p 3, ¶ 9. Upon further examination, Dr. Mancuso performed an emergency debridement, ordered Plaintiff to undergo an MRI and placed Plaintiff on antibiotics. *Id.* p. 3, ¶ 10. After Dr. Mancuso examined the wound and reviewed the results of the MRI and lab tests, he informed Plaintiff that the fifth toe on Plaintiff's right foot and the bone under it required removal due to infection. *Id.* p. 3, ¶ 11. As part of the pre-operative procedures, Plaintiff was required to undergo an angiocardiography test to analyze whether his heart was healthy enough for anesthesia and surgery. *Id.* p. 3, ¶¶ 12-13. After reviewing the results of the angiocardiography test, doctors determined that Plaintiff suffered from arterial blockages in three or more of his coronary arteries. *Id.* p. 3, ¶ 13.

3      To avoid confusion, the Court refers to both page numbers and paragraphs of Plaintiff's Complaint since the paragraphs within the Complaint are sequentially numbered only within each section.

On December 7, 2013, Plaintiff was transferred to St. Francis Hospital ("St. Francis") where his cardiac condition continued to be monitored. *Id.* p. 3, ¶ 14. Plaintiff was also referred to and examined by Defendant Dr. Matano who specializes in vascular surgery. *Id.* In addition to treating patients at St. Francis, Dr. Matano maintains a private medical practice in Great Neck, New York. *Id.* Plaintiff contends that notwithstanding the Good Samaritan treatment notes, MRI images and discharge papers regarding the condition and recommended course of treatment for his fifth toe on his right foot, Dr. Matano ignored such recommendations and performed only a further debridement and excision which left the bone intact. *Id.* p. 4, ¶¶ 15-17. The Complaint asserts that Defendant's motivation in foregoing amputation of the toe, as had been recommended by Dr. Mancuso, was based on "recklessness, laziness and discrimination." *Id.* p. 4, ¶ 17; p. 6, ¶ 23. Specifically, Plaintiff states that during his hospital stay at St. Francis, an unidentified staff member overheard Dr. Matano refer to Plaintiff as a "Medicaid Israeli" and that this individual confided in a "brother Jew" that this statement was made.[4] *Id.* p. 4, ¶ 17; p. 5, ¶ 18; p. 7-8, ¶ 1. As a result of the medical procedure performed by the Defendant, Plaintiff states that he experienced "eight months of pain, suffering, loss of muscles, and loss of quality of life." *Id.* p. 4, ¶ 19.

4      The identity of the "brother Jew" to whom Plaintiff refers is unclear from the Complaint.

Following his discharge from St. Francis on December 24, 2013, Plaintiff remained under the care of Defendant Dr. Matano. *Id.* p. 8, ¶ 2. Specifically, during one of Plaintiff's follow-up visits with Dr. Matano at his office in Great Neck, New York, Dr. Matano allegedly asked Plaintiff whether "there [were] enough chairs in the waiting room? [A]re they all in one piece?" *Id.* Plaintiff asserts that this comment was not made in the context of any diagnosis of Plaintiff's condition and was simply "a joke making a mockery of the plaintiff...." *Id.* Further, Plaintiff claims that when he arrived at Dr. Matano's office for his next visit, Dr. Matano's secretary informed him that Dr. Matano does not accept Medicaid and that the office would "not accept [Plaintiff for treatment]." *Id.* p. 9, ¶ 4. Plaintiff asserts that despite the secretary's statement that Dr. Matano did not accept Medicaid, this was not the case. *Id.* In addition, Plaintiff states that the comment to the effect that Dr. Matano would not accept him for treatment was itself discriminatory. *Id.*

**B. Relevant Procedural History**

Plaintiff filed his Complaint on October 15, 2015. *See* DE 1. Thereafter, on November 30, 2015, Judge Bianco waived the pre-motion conference requirement with respect to Defendant's anticipated motion to dismiss and set a briefing schedule. *See* November 30, 2015 Electronic Order. On January 11, 2016, Defendant filed his motion to dismiss as well as a separate motion for sanctions. *See* DE 13, 14. Thereafter, on January 13, 2016, Judge Bianco referred both of Defendant's motions to the undersigned for a Report and Recommendation and further directed that the briefing schedule set for Defendant's motion to dismiss would apply equally to Defendant's motion for sanctions. *See* January 13, 2016 Electronic Order. The motions were fully briefed as of February 22, 2016. Subsequently, Plaintiff filed what the Court will refer to as a sur-reply. *See* DE 21.[5]

5      There is no entry in the docket showing that Plaintiff sought leave to file a sur-reply or that such leave was granted at any point. Local Civil Rule 6.1(b) does not contemplate the filing of a sur-reply. *See* Local Civil Rule 6.1(b). Although Plaintiff is proceeding in a *pro se* capacity, he has an obligation, notwithstanding his *pro se* status, to be aware of and adhere to all applicable procedural

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 60 of 88

Sachs v. Matano, Not Reported in Fed. Supp. (2016)

2016 WL 4179792

rules. *Jonas v. Citibank, N.A.*, 414 F. Supp. 2d 411, 417 (S.D.N.Y. 2006) (quoting *McNeil v. U.S.*, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984, 124 L.Ed. 2d 21 (1993)) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *See Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal citation omitted); *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (same); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (finding that *pro se* litigants "generally are required to inform themselves regarding procedural rules and to comply with them") (internal quotations and citation omitted); *Tomaino v. U.S.*, No. 09-CV-1578, 2010 WL 1005896, at *2 (E.D.N.Y. Mar. 16, 2010) (recognizing that status as *pro se* plaintiff does not "reduce [plaintiff's] burden" to adhere to procedural rules). In light of the foregoing case law, this Court declines to consider Plaintiff's sur-reply.

**\*3** Prior to the filing of his Complaint in this Court, Plaintiff filed a Complaint in the New York State Supreme Court, County of Nassau, on May 21, 2015, alleging medical malpractice based upon the same nucleus of operative facts involving Dr. Richard Matano — the same individual named as the Defendant in the instant action. *See* Plaintiff's Summons and Complaint filed in the New York State Supreme Court, County of Nassau, attached as Ex. B to Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."). Further, on January 21, 2016, Hon. Arthur M. Diamond, Justice of the New York State Supreme Court, issued a written decision granting Dr. Matano's motion for summary judgment and dismissing Plaintiff's Complaint in its entirety. *See* Summary Judgment Opinion and Order, attached as Ex. A to Defendant's Reply Memorandum in Support of Motion to Dismiss ("Def.'s Reply").

## III. DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *Buch v. Farmingdale State College*, No. 12-CV-1762, 2013 WL 789354, at \*10 (E.D.N.Y. March 4, 2013); *see also Meadows v. City of New York*, No. 10-CV-286, 2011 WL 864832, at \*3 (E.D.N.Y. March 11, 2011) (noting that "[A] Rule 12(b)(6) motion to dismiss tests the legal, not the factual sufficiency of a complaint.")

The plaintiff must satisfy "a flexible 'plausibility standard.' " *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 61 of 88

**Sachs v. Matano, Not Reported in Fed. Supp. (2016)**
2016 WL 4179792

as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

**\*4** Although a motion to dismiss is generally decided solely upon the pleadings and documents attached thereto, a court may consider materials outside of the pleadings when determining issues of subject matter jurisdiction. *See Wittich v. Wittich*, 2006 WL 3437407, \*2 n. 2 (E.D.N.Y. Nov. 29, 2006); *Trakansook v. Astoria Fed. Sav. & Loan Ass'n*, No. 06-CV-1640, 2007 WL 1160433, at \*1 n. 1 (E.D.N.Y. Apr. 18, 2007), *aff'd*, 2008 WL 4962990 (2d Cir. 2008). In addition, a court may examine the state court record where issues of *res judicata* or collateral estoppel may be implicated. *Trakansook*, 2007 WL 1160433, at \*1 n. 1. Further, fairness concerns that arise when matters outside of the pleadings are considered are not at issue in the instant case since both Plaintiff and Defendant were parties to the state court action and therefore had notice of the filings and decisions rendered by the state court in that action. *Id.*; *see, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (recognizing that the primary issue involved when a court reviews matters outside of the pleadings is lack of notice to the plaintiff).

## B. Discussion

### *1. Preclusion*

"The Full Faith and Credit Act, 28 U.S.C. § 1738, has long been understood to encompass the doctrines of claim and issue preclusion and to require that federal courts not grant a forum to litigants whose claims have previously been resolved in state court." *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 337-38 (E.D.N.Y. 2012) (quoting *Trakansook*, 2007 WL 1160433, at \*6) (citation omitted); *D'Angelo v. City of New York*, 929 F. Supp. 129, 134 (S.D.N.Y. 1996).

### a. Principles of *Res Judicata* (Claim Preclusion)

The doctrine of *res judicata* [6] or claim preclusion operates to ensure that "[a] final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Niles*, 859 F. Supp. 2d at 338; *see Heimbach v. Chu*, 744 F.2d 11 (2d Cir. 1984), *cert. denied*, 470 U.S. 1084, 105 S. Ct. 1842, 85 L.Ed. 2d 141 (1985); *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968); *Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040, 2009 WL 2959619, at \*3 (E.D.N.Y. Sept. 14, 2009); *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999). The doctrine applies equally to New York law and federal law and thus, when applying the doctrine, a court must be mindful that "a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Niles*, 859 F. Supp. 2d at 338 (quoting *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994)). Further, "[a]ll litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*." *Done*, 2009 WL 2959619, at \*3; *see Niles*, 859 F. Supp. 2d at 338; *Eubanks v. Liberty Mortgage Banking Ltd.*, 976 F. Supp. 171, 172–74 (E.D.N.Y. 1997) (determining that *res judicata* barred *pro se* plaintiff's claims); *see Council v. Better Homes Depot, Inc.*, 04 CV 5620, 2006 WL 2376381, at \*4 (E.D.N.Y. Aug. 16, 2006) (citing cases); *see also Lake George Park Comm'n v. Salvador*, 245 A.D.2d 605, 664 N.Y.S.2d 847, 850 (App. Div. 1997) ("A *pro se* litigant acquires no greater rights than any other litigant.").

6    Defendant first raised the defense of *res judicata* in his reply brief due to the fact that summary judgment was rendered by the state court in Defendant's favor only after the Defendant filed the opening papers in support of his motion to dismiss. However, "[i]t is well established law in this circuit that certain affirmative defenses, including res judicata, may be raised *sua sponte*." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 400 (2d Cir. 2003); *Rene v. Jablonski*, No. 08-CV-3968, 2009 WL 2524865, at \*8 (E.D.N.Y. Aug. 17, 2009) ("Although defendant did not raise the affirmative defense of *res judicata*, the Court has the authority to exercise its discretion to raise the *res judicata* doctrine *sua sponte*, in the interest of judicial economy."); *see Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (holding that "the strong public interest in economizing the use of judicial resources by avoiding relitigation" justifies a court's *sua sponte* raising of *res judicata*, and that "[t]he failure of a defendant to raise *res judicata* in [his] answer does not deprive a court of the power to dismiss a claim on that ground"); *Vasquez v. Gotti*, No. 09–CV–1680, 2009 WL

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 62 of 88

Sachs v. Matano, Not Reported in Fed. Supp. (2016)
2016 WL 4179792

2226578, at *2 (E.D.N.Y. July 23, 2009) (raising *res judicata* defense *sua sponte* and dismissing *pro se* complaint). As such, even were the Court to disregard Defendant's invocation of *res judicata*, because it was raised for the first time in reply, the Court would nevertheless raise the doctrine on its own in light of the procedural posture of this case.

**\*5** In order to determine whether a subsequent lawsuit is barred by *res judicata*, "a court must determine whether the second suit involves the same 'claim,' or 'nucleus of operative fact' as the first suit." *Carr v. Health Ins. Plan of Greater New York, Inc.*, 111 F. Supp. 2d 403, 410 (S.D.N.Y. 2000) (internal citation omitted); *see Waldman v. Vill. of Kiryas Joel*, 207 F.3d 403, 410 (2d Cir. 2000); *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997). To make this determination, a court must analyze whether: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Carr*, 111 F. Supp. 2d at 410; *see Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000); *Bey v. City of New York*, 454 Fed.Appx. 1, 3 (2d Cir. 2011); *Niles*, 859 F. Supp. 2d at 338; *Done*, 2009 WL 2959619, at *3. With respect to whether a claim should or could have been interposed in the prior lawsuit, New York utilizes a "transactional" approach which provides that a claim should have been brought if it arises "out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Kesten v. Eastern Sav. Bank*, No. 07-CV-2071, 2009 WL 303327 at *3 (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The Court turns its attention to the application of these elements within the facts of the instant case.

### b. *Res Judicata* Bars Plaintiff's Federal Lawsuit

First, the previous state court action was decided on summary judgment. *See* Def.'s Reply, Ex. A (Summary Judgment Opinion and Order). Pursuant to New York law, such a determination constitutes an adjudication on the merits for purposes of application of the doctrine of *res judicata*. *See Hwang v. Dunkin' Donuts Inc.*, 840 F. Supp. 193, 197 (N.D.N.Y. 1994), *aff'd*, 28 F.3d 103 (2d Cir. 1994) ("Under New York law, the granting of summary judgment 'constitutes a final judgment on the merits for the purposes of res judicata.' ") (quoting *G & T Terminal Packaging v. Consolidated Rail Corp.*, 719 F. Supp. 153, 158 (S.D.N.Y. 1989)); *see also*

*Pantoja v. Scott*, No. 96 CIV. 8593, 2001 WL 1313358, at *6 (S.D.N.Y. Oct. 26, 2001) (recognizing that "a state court's grant of partial summary judgment constitutes a 'final' judgment for res judicata purposes."); *Hennessy v. Cement & Concrete Worker's Union Local 18A*, 963 F. Supp. 334, 338-39 & n. 1 (S.D.N.Y. 1997) (same).

Second, both the instant action as well as the prior state court action were commenced by the same Plaintiff, thus satisfying the privity requirement. *See* Def.'s Mem., Ex. B (Plaintiff's Summons and Complaint filed in New York State Supreme Court); Def.'s Reply, Ex. A; *see also Niles*, 859 F. Supp. 2d at 339 (determining that the privity requirement was satisfied where plaintiff "was a named party to the [prior] proceeding ... and is the party who commenced the instant action."); *Trakansook*, 2007 WL 1160433, at *7; *Done*, 2009 WL 2959619, at *4.

Finally, Plaintiff should have brought the discrimination claims he asserts in the instant case in his earlier state court action since these claims arose "out of the same factual grouping as [his] earlier litigated claim." *Kesten*, 2009 WL 303327 at *3. For example, the factual basis underlying Plaintiff's assertion of medical malpractice set forth in his state court complaint stems from Plaintiff's admission to Good Samaritan Hospital on Thanksgiving Day in 2013 and the subsequent care and treatment he received from Dr. Richard Matano regarding his injured right foot and eventual debridement of his toe. *See* Def.'s Mem., Ex. A ¶¶ 6-26. A review of Plaintiff's current federal Complaint reveals that Plaintiff's discrimination claims arise from the very same set of facts, namely, the care and treatment he received from Dr. Matano for his right foot injury. *See generally* Compl.; Section II. A. *supra* (setting forth factual background as taken from Plaintiff's Complaint in the instant case). Further, although Plaintiff included additional factual allegations in the instant Complaint that were not contained within the earlier complaint filed in state court, under New York's "transactional" approach, the inclusion of these additional facts — which stem from the same alleged factual nucleus — cannot serve to frustrate the application of *res judicata*. This is so because the "transactional" test merely requires that the two actions are "related in time, space, origin, [and] motivation [and] form a convenient trial unit." *Marvel Comics, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002); *Carr*, 111 F. Supp. 2d at 410.

**\*6** After reviewing the facts underlying Plaintiff's earlier state court action and comparing them with the facts asserted

2016 WL 4179792

in the instant case, there is no doubt that the instant matter arises from the same set of facts as Plaintiff's earlier state court action. Further, the fact that Plaintiff's prior action sounded in medical malpractice while the instant case is premised upon various forms of discrimination does not change the analysis since "a prior decision dismissed 'on the merits' is binding in all subsequent litigation between the same parties on claims arising out of the same facts, *even if based upon different legal theories* or seeking different relief on issues which were *or might have been* litigated in the prior action but were not." *N. Assur. Co. of Am. v. Square D. Co.*, 201 F.3d 84, 87 (2d Cir. 2000) (emphasis added) (quoting *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397 (2d Cir. 1997)); *see also Trakansook*, 2007 WL 1160433, at \*7 (noting that "although plaintiff's Section 1983 claim invokes a legal theory that was not raised in the state court litigation, this is insufficient to overcome preclusion"); *Reilly v. Reid,* 45 N.Y.2d 24, 30 (1978) (holding that, "where the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action"). Indeed, Plaintiff cannot acquire two proverbial "bites at the apple" by "splitting his claims into various suits, based on different legal theories," *Waldman*, 207 F.3d at 410, which is precisely what Plaintiff has attempted to do here.

By splitting his claims, Plaintiff "took the risk that res judicata would preclude his federal claims when he filed the [previous] action in state court and litigated it to a final judgment. Plaintiff might have taken this risk because he preferred to be in state court for strategic reasons. In any event, plaintiff chose to conduct the litigation in state court and, in doing so, took the risk that the judgment in that action would be dispositive of his federal claims." *O'Connor v. Pierson*, 482 F. Supp. 2d 228, 234 (D. Conn. 2007), *aff'd*, 568 F.3d 64 (2d Cir. 2009). Further, although dividing claims "may seem attractive from a plaintiff's perspective, it is not the system established by [28 U.S.C.] § 1738. That statute embodies the view that it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims. This reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84, 104 S. Ct. 892, 898, 79 L.Ed. 2d 56 (1984).

In light of the foregoing analysis, this Court respectfully recommends to Judge Bianco that Defendant's motion to dismiss be GRANTED.

## IV. DEFENDANT'S MOTION FOR SANCTIONS

### A. The Law of Sanctions

#### 1. General Principles

Rule 11 provides a mechanism for imposing sanctions against a party who advances a frivolous legal argument or asserts claims without a reasonable factual basis or for an improper purpose. Fed. R. Civ. P. 11(b), (c); *see Spithogianis v. Haj-Darwish*, No. 07 CIV 4609, 2008 WL 82188, at \*9 (S.D.N.Y. Jan. 7, 2008); *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 139 (S.D.N.Y. 2002) (quoting *Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp., Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)) (recognizing that Rule 11 provides for the imposition of sanctions "when a party has signed a pleading for 'an improper purpose such as to delay or needlessly increase the cost of litigation,' or ... when a party presents to the court papers 'without a belief formed, from a reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.' "). As such, Rule 11 imposes an affirmative duty on a litigant to conduct a reasonable inquiry into the law and facts before filing a pleading, and the standard to be applied is one of objective reasonableness. *See Spithogianis*, 2008 WL 82188, at \*9; *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *Oliveri v. Thompson*, 803 F.2d 1265, 1278-79 (2d Cir. 1986) ("Although [previous Second Circuit law] might be read as leaving open the possibility of ... a subjective violation of the rule, we hold today that there is no necessary subjective component to a proper Rule 11 analysis."). Utilizing this objective standard, a violation of Rule 11 occurs where, at the time the litigant signed the pleading, *Oliveri*, 803 F.2d at 1274, it was "patently clear that a claim has absolutely no chance of success." *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 360 (S.D.N.Y. 2005) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 659 (S.D.N.Y. 1996)). Nevertheless, the decision to impose Rule 11 sanctions rests squarely within the sound discretion of the district court. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *Lorber v. Winston*, 993 F. Supp. 2d 250, 253 (E.D.N.Y. 2014) ("[T]he decision whether to impose [Rule 11] sanctions is not mandatory, but rather is a matter for the court's discretion."). Despite such unfettered authority, Rule 11 sanctions "should be imposed with caution," *Murawski v. Pataki*, 514 F. Supp. 2d 577, 590, (S.D.N.Y. 2007) (quoting *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)), and any doubts should be resolved

in favor of the non-moving party. *See Perez,* 373 F.3d at 324. In addition, any sanction that is ultimately imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

**\*7** Although sanctions under Rule 11 should be imposed with caution, it is well settled that a party's status as a *pro se* litigant "does not shield him from Rule 11 sanctions because one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Malley v. New York City Bd. of Educ.,* 207 F. Supp. 2d 256, 258 (S.D.N.Y. 2002); *see Yosef v. Passamaquoddy Tribe,* 876 F.2d 283, 287 (2d Cir. 1989); *Fariello v. Campbell,* 860 F. Supp. 54, 71 (E.D.N.Y. 1994). However, where a *pro se* litigant is alleged to have run afoul of Rule 11, courts generally apply a more lenient standard than would be applicable where a party is represented by learned counsel. *See Horton v. Trans World Airlines Corp.,* 169 F.R.D. 11, 15-16 (E.D.N.Y. 1996); *Fariello,* 860 F. Supp. at 71; *Baasch v. Reyer,* 827 F. Supp. 940, 944 (E.D.N.Y. 1993). Thus, in such cases, "Rule 11's application [is] determined on a sliding scale according to the litigant's level of sophistication." *Horton,* 169 F.R.D. at 16; *see Simpson v. Putnam Cty. Nat'l Bank of Carmel,* 112 F. Supp. 2d 284, 292 (S.D.N.Y. 2000) (noting that "the court may consider the 'special circumstances of litigants who are untutored in the law.' ") (quoting *Maduakolam v. Columbia Univ.,* 866 F.2d 53, 56 (2d Cir. 1989)). Further, where a litigant has some experience with the legal system, courts may treat him less leniently than "wholly inexperienced *pro se* litigants." *Muniz v. Goord,* No. 9:04-CV-0479, 2007 WL 2027912, at \*6 n. 30 (N.D.N.Y. July 11, 2007); *see also Kadan v. Williams,* 89 Civ. 3379, 1990 WL 47680, at \*3 (S.D.N.Y. April 11, 1990) (imposing sanctions on businessman familiar with litigation); *Bryant v. American Embassy (AMC),* No. 88 Civ. 0294, 1988 WL 68740, at \*1 (S.D.N.Y. June 16, 1988) (noting that *pro se* plaintiff's ability "to consult with an attorney" exposed him to a higher risk of sanctions). In determining whether sanctions should be imposed on a *pro se* litigant, the court should consider whether the litigant has been previously warned that his conduct is in derogation of Rule 11. *See Commer v. American Federation of State, County and Municipal Employees,* 272 F. Supp. 2d 332, 340 (S.D.N.Y. 2003); *Daniel v. Safir,* 135 F. Supp. 2d 367, 379 (E.D.N.Y. 2001) ("The court may also consider whether the litigant has been warned of the possible imposition of sanctions.") (internal quotation and citations omitted); *Elghanian v. Schachter,* 97 Civ. 0959, 1997 WL 607546, at \*2 (S.D.N.Y. Oct. 1, 1997); *Kuntz v. Pardo,* 160 B.R. 35, 40 (S.D.N.Y. 1993).

The following factors are generally considered by a court when determining whether to levy Rule 11 sanctions: "(1) [w]hether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case." *Ratner v. Robinson,* No. 13-CV-6278, 2015 WL 6965077, at \*18-19 (E.D.N.Y. Nov. 10, 2015); *see Vasile v. Dean Witter Reynolds Inc.,* 20 F. Supp. 2d 465, 506 (E.D.N.Y. 1998).

### *2. Injunctive Sanctions*

As part of its inherent authority to "sanction parties appearing before it acting in bad faith, vexatiously, wantonly, or for oppressive reasons," *see Fariello,* 860 F. Supp. at 71 (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-46, 111 S. Ct. 2123, 2133, 115 L.Ed. 2d 27 (1991)), a court may impose injunctive relief in the form of "prevent[ing] a litigant from filing pleadings, motions or appeals upon a showing of extraordinary circumstances, such as demonstrated history of frivolous and vexatious litigation or a failure to comply with sanctions imposed for such conduct." [7] *Malcolm v. Bd. of Educ. Of Honeoye Falls-Lima Central Sch. Dist.,* 506 Fed.Appx. 65, 69 (2d Cir. 2012); *see SBC 2010-1 LLC v. Morton,* 552 Fed.Appx. 9, 12 (2d Cir. 2013) (recognizing that "a district court may impose filing injunctions subjecting a vexatious litigant to a leave of court requirement with respect to future filings."); *In re Martin-Trigona,* 9 F.3d 226, 229 (2d Cir. 1993).

[7]    The Court's authority to impose injunctive relief of this nature also arises from the All-Writs Act, which empowers the court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see MLE Realty Assocs. v. Handler,* 192 F.3d 259, 261 (2d Cir. 1999) ("The All-Writs Act grants district courts the power, under certain circumstances, to enjoin

parties from filing further lawsuits"); *Matter of Hartford Textile Corp.*, 613 F.2d 388, 290 (2d Cir. 1979) (holding that the All-Writs Act "grant[s] the district court power *sua sponte* to enjoin further filings in support of frivolous and vexatious claims."); *see also Brown v. Moralles*, No. 14-CV-1382; 14-CV-2932, 2014 WL 6610992, at *9 (E.D.N.Y. Nov. 18, 2014).

**\*8** In determining whether such a "filing sanction" is appropriate, district courts consider the following factors: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." *Castro v. Samuel*, 50 F. Supp. 3d 377, 381 (E.D.N.Y. 2014), *appeal dismissed*, (Jan. 14, 2015) (quoting *Iwachiw v. N.Y. State DMV*, 396 F.3d 525, 528 (2d Cir. 2005)); *see Brown*, 2014 WL 6610992, at *9-10. Notwithstanding the guidance afforded by these factors, "[u]ltimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. United States Lines Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *Brown*, 2014 WL 6610992, at *10. In addition, prior to imposing such injunctive relief, the court is under an obligation to provide a litigant notice of the impending filing sanction and an opportunity to be heard. *See Castro*, 50 F. Supp. 3d at 381; *Brown*, 2014 WL 6610992, at *10; *SBC 2010-1 LLC*, 552 Fed.Appx. at 12. Likewise, any filing sanction imposed must be narrowly tailored "so as to preserve the litigant's right of access to the court." *Brown*, 2014 WL 6610992, at *10; *see Bd. of Managers of 2900 Ocean Avenue Condominium v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996).

### B. Imposition of Sanctions

In his motion seeking sanctions against Plaintiff, Defendant states that Plaintiff "has filed at least four complaints against the defendant or his attorneys" and has attached copies of each complaint to the instant motion. *See* Memorandum of Law in Support of Motion for Sanctions ("Def.'s Mem.") at 1; Exhibits A through D, attached to the January 11, 2016 Declaration of Robert F. Elliot ("Elliot Decl.") in Support of the Motion for Sanctions. In addition, Defendant has

attached emails written by Plaintiff to current and predecessor counsel which Defendant alleges are "offensive, harassing, and threatening" and contends that Plaintiff "continues to make a point of his use of the courts for purposes of harassment and annoyance." Def.'s Mem. at 2. Defendant further claims that Plaintiff has on prior occasions "engaged in ... commencing frivolous lawsuits and then suing attorneys for the adversary [and that] such conduct resulted in a state court injunction." *Id.* at 4; Elliot Decl., Ex. F (Supreme Court – State of New York Short Form Order in the action of *Sachs v. Clayton*). Based upon Plaintiff's course of conduct in this action, Defendant requests that the Court impose both monetary sanctions as well as a filing injunction to prevent Plaintiff "or anyone acting on his behalf, from bringing any lawsuit, without first obtaining permission from the Court, on any subject matter and in any court, against Richard A. Matano, M.D., St. Francis Hospital, the insurance companies of such persons or entities, the attorneys including Robert F. Elliot, Esq., the firm of Bartlett, McDonough, & Monaghan LLP, or its employees or members or partners or associates." *Id.* at 7-8.

In his response, Plaintiff does not directly address Defendant's arguments but makes only generalized statements concerning the underlying action. Further, Plaintiff states "that [the] law and the facts of this lawsuit are clear. There is no need for the plaintiff to repeat them or bring any proofs at this stage." *See* Affirmative Answer to Defendant['s] Motion to Dismiss and Motion for Sanctions ("Pl.'s Opp'n") at 2. Although the Court liberally construes a *pro se* Plaintiff's filings in order to glean all reasonable claims and arguments, *see Thomas v. Calero*, 824 F. Supp. 2d 488, 497 (S.D.N.Y. 2011), Plaintiff has not interposed any cogent legal arguments that provide support to his opposition to Defendant's motion for sanctions. Rather, Plaintiff relies solely upon a generalized diatribe which is not a substitute for proper briefing — even considering Plaintiff's *pro se* status. In Defendant's reply, counsel responds that the state court, in deciding the underlying summary judgment motion in Defendant's favor there, necessarily illustrates that "plaintiff's claims are without merit and demonstrates that plaintiff was not pursuing the lawsuit for legitimate purposes." Reply Memorandum in Support of Motion for Sanction ("Def.'s Reply") at 2.

**\*9** After reviewing Plaintiff's Complaint through an objective lens, the Court is not convinced that at the time of its filing it was "patently clear that [Plaintiff's] claim[s] ha[d] absolutely no chance of success." *Dujardin*, 359 F. Supp. 2d at 360. The aim of Rule 11 is to ensure that counsel and *pro*

Sachs v. Matano, Not Reported in Fed. Supp. (2016)

2016 WL 4179792

*se* litigants "conduct a reasonable inquiry into the law and facts before signing pleadings ... [and] to 'stop-and-think' before initially making legal or factual contentions." Rule 11 Advisory Committee Notes to 1993 Amendments. The Court cannot say that Plaintiff failed to abide by this guidance at the time the Complaint was filed, especially since "a litigant may have good reason to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation." *Id.* Likewise, although Defendant contends that the allegations in Plaintiff's complaint are frivolous, *see* Notice of Motion for Sanctions at 1, the Court, at this juncture, cannot reach such a conclusion since "[a]n action is frivolous when the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy. A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Castro*, 50 F. Supp. 3d at 380 (quoting *Morse v. Network of Al–Queda Attorneys*, 12–CV–1102, 2012 WL 1155821, at *5 (E.D.N.Y. Apr. 5, 2012)). In the instant case, this Court has determined that Plaintiff's Complaint is procedurally improper based upon the doctrine of *res judicata.* However, at the time it was filed, there is no objective indication that Plaintiff, a *pro se* litigant, filed the Complaint with affirmative knowledge that it was procedurally improper or that the Complaint itself lacked any basis in fact or law or was solely the product of delusion or fantasy. As such, the Court does not find that the filing of this Complaint was clearly violative of Rule 11, especially given Plaintiff's *pro se* status. As such, imposing sanctions upon Plaintiff on this basis alone would be inappropriate — especially since any doubt as to such action should be made in Plaintiff's favor, *see Perez*, 373 F.3d at 324, and such sanctions "should be imposed with caution." *Murawski*, 514 F. Supp. 2d at 590 (quoting *Knipe*, 19 F.3d at 78); *see also Daniel v. Safir*, 135 F. Supp. 2d 367, 379 (E.D.N.Y. 2001) ("Plaintiff's claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se.*")

However, after reviewing some of the emails written by *pro se* Plaintiff Sachs prior to and during the pendency of this litigation, the Court is especially troubled by Plaintiff's seeming lack of civility in his communications with opposing counsel, which reflects a disdain for the same legal system Plaintiff seeks to invoke to vindicate his own rights. For example, in one particular email written to Defendant's prior counsel, Plaintiff stated "I don't get any prettier sitting here and waiting for you. Please move your small little A** honey and make a move." Def.'s Mem., Ex. E (August 27, 2015 Email from *pro se* Plaintiff to attorney Daniele Dezago). In another example, Plaintiff wrote that opposing counsel was a "Donkeys [*sic*] rear A**." *Id.* (September 18, 2015 Email from *pro se* Plaintiff to attorney Robert Elliot). Moreover, the signature line of Plaintiff's emails — containing the phrase "Litigation 4 Recreation" — is equally troubling to the Court. The utilization of the judicial system is not a hobby or a game. Rather, this third branch of the government provides a manner and means of affording those who have been legally wronged with an avenue in which to vindicate their rights. It is not — as Plaintiff seems to imply from such a signature line — a forum to be used and exploited for Plaintiff's own personal retaliatory satisfaction. Indeed, "[a] court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Jenkins v. Eaton*, No. 08-CV-0713, 2010 WL 5071995, at *3 (E.D.N.Y. Dec. 7, 2010) (quoting *Lipin v. Hunt*, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008)). Unfortunately, Plaintiff's inappropriate conduct here does not appear to be an isolated incident. In an Order issued by the Honorable Dana Winslow, Justice of the Supreme Court of the State of New York in the case of *Sachs v. Clayton*, the court stated that it was "troubled by plaintiff's utter lack of respect for his opponents and the entire court system and further noted that "[p]laintiff's opposition papers and his inappropriate letters to this Court and the Hon. Anthony Marano, indicate that he seeks to use the legal system as a tool for harassment ... [and that] plaintiff has abused the judicial process[.]" Def.'s Mem., Ex. F (July 18, 2012 Order issued in the case of *Sachs v. Clayton*).

Although "[a]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests," *In re Martin-Trigona*, 737 F.2d 1254, 1263 (2d Cir. 1984), the Court nevertheless has an inherent obligation to ensure that those appearing before it comport themselves in a manner that ensures the "orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S. Ct. 1386, 1388–1389, 8 L.Ed. 2d 734 (1962)). As such, notwithstanding the Court's ability to impose sanctions based upon conduct that is violative of Rule 11, the Court, through the exercise of its inherent power, is imbued with the authority to "fashion an appropriate sanction for conduct which abuses the judicial process. *Chambers*, 501 U.S. at 44-45; *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d

124, 136 (2d Cir. 1998) (recognizing that "the fact that there may be a statute or rule which provides a mechanism for imposing sanctions of a particular variety for a specific type of abuse does not limit a court's inherent power to fashion sanctions, even in situations similar or identical to those contemplated by the statute or rule.") (quoting *Chambers*, 501 U.S. at 44-45); *Palmer v. Cty. of Nassau*, 977 F. Supp. 2d 161, 167 (E.D.N.Y. 2013) ("Federal courts have inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices. Courts may impose sanctions and rely upon their inherent authority even where the conduct at issue is not covered by one of the other sanctioning provisions. Moreover, a district court may resort to its inherent power to fashion sanctions, even in situations similar or identical to those contemplated by a statute or rule."); *see also Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) (noting that a "district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.").

 **\*10** In the instant case, the Court finds that although the conduct engaged in by *pro se* Plaintiff (*i.e.*, the inappropriate language and overall tenor used in his email correspondence, coupled with the use of a signature line which establishes at least a strong inference that Plaintiff's motivation is for other than a proper purpose) cannot be countenanced, sanctions at this stage are inappropriate. The reason is that Plaintiff, who is proceeding *pro se*, has not yet been explicitly warned by the Court that such conduct runs afoul of the rules of civility, is a direct impediment to the orderly disposition of this as well as any other case, and is sanctionable. *See Baasch*, 827 F. Supp. at 944 (imposing sanctions on *pro se* litigant only after litigant was put on notice that her conduct was sanctionable); *London v. SPC Comm'cs, Inc.*, 177 F.R.D. 196, 200 (S.D.N.Y. 1998) (same); *Daniel*, 135 F. Supp. 2d at 378 (declining to impose sanctions where *pro se* plaintiff received no prior warning that conduct was sanctionable). However, *pro se* Plaintiff Sachs is now on notice that the Court will not tolerate any further lack of civility, candor or decorum when communicating with the Court or opposing counsel during the pendency of this or any other lawsuit filed in this Court. Further, Plaintiff is directed to adhere strictly to the mandates set forth in Rule 11 before submitting any future filings. In addition, Plaintiff is to ensure that prior to filing a pleading, motion or any other paper with the Court, there exists a sound basis in fact and law for doing so. Although the Court is mindful that the crucible of litigation may cause a litigant's passions and prejudices to become

inflamed, it is nevertheless incumbent upon those who seek relief from the Court to comport themselves accordingly, both with the Court as well as their adversary, and to adhere to all applicable substantive and procedural rules. In the event that Plaintiff fails to heed this Court's warnings going forward, appropriate sanctions will be levied.

In light of the foregoing discussion, the Court respectfully recommends to Judge Bianco that Plaintiff's motion for sanctions be DENIED.

## V. CONCLUSION
For the foregoing reasons, the Court respectfully recommends to Judge Bianco that Defendant's motion to dismiss Plaintiff's Complaint be GRANTED and that Defendant's motion for sanctions be DENIED, in accordance with this Report and Recommendation.

## VI. OBJECTIONS
Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Defendant's counsel is directed to serve a copy of this Report and Recommendation upon the *pro se* Plaintiff forthwith by overnight mail and first class mail and to file proof of such service on ECF.**

**SO ORDERED**.

## All Citations

Not Reported in Fed. Supp., 2016 WL 4179792

**Sachs v. Matano, Not Reported in Fed. Supp. (2016)**

2016 WL 4179792

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 2:15cv06049**<br>SACHS v. MATANO | — | E.D.N.Y. | Oct. 15, 2015 | Docket |

**WESTLAW** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1.  Sachs v. Matano
2016 WL 4179792 , E.D.N.Y. , July 15, 2016

*Report and Recommendation Adopted by*

2.  Sachs v. Matano
2016 WL 4186708 , E.D.N.Y. , Aug. 04, 2016

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

McCluskey v. New York State Unified Court System, Not Reported in Fed. Supp. (2010)

2010 WL 11632696

2010 WL 11632696
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Peter MCCLUSKEY, Plaintiff,
v.
NEW YORK STATE UNIFIED COURT SYSTEM,
Chief Judge Hon. Jonathan Lippman, Gabor &
Gabor, David Gabor, Hope Gabor, Defendants.

10-CV-2144 (JFB) (ETB)
|
Signed 07/09/2010

**Attorneys and Law Firms**

Peter McCluskey, Lynbrook, NY, pro se.

Anne C. Leahey, Devitt Spellman Barrett, Smithtown, NY, Joan M. Faley, Labatte, Balkan, Colavita & Contini, LLP, Garden City, NY, for Defendants.

ORDER

JOSEPH F. BIANCO, UNITED STATES DISTRICT JUDGE

**\*1** *Pro se* plaintiff Peter McCluskey ("plaintiff") filed a complaint on May 11, 2010 against the defendants, New York State Unified Court System, Chief Judge Hon. Jonathan Lippman, Gabor & Gabor, David Gabor, and Hope Gabor. [1] The complaint purported to allege claims for deprivation of due process against the New York State Unified Court System and claims for malpractice against the Gabor defendants. By Order dated June 17, 2010, the Court dismissed plaintiff's federal claims *sua sponte*, with prejudice, and declined to exercise supplemental jurisdiction plaintiff's state law claims.

[1]   For ease of reference, Gabor & Gabor, David Gabor, and Hope Gabor are referred to collectively as the "Gabor defendants."

The Gabor defendants now seek to impose sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), against plaintiff. Specifically, the Gabor defendants claim that, in filing the complaint, plaintiff submitted a frivolous pleading that was not warranted by existing law or by a good-faith argument for the extension, modification, or reversal of existing law, or for the establishment of new law,

and continued to pursue claims with no legal or factual basis. Specifically, the Gabor defendants argue that plaintiff violated Rule 11 by filing a complaint that: (i) raised claims that were previously dismissed by the New York State courts; (ii) raised claims that were barred by the statute of limitations; and (iii) raised claims for which there was no basis for federal subject matter jurisdiction. For the reasons that follow, the Gabor defendants' motion for sanctions is denied.

Under Rule 11, to avoid the risk of sanctions, a plaintiff must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ). In considering a motion for sanctions under Rule 11, this Court applies an objective standard of reasonableness. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1996). Moreover, "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks and citation omitted). Additionally, "when divining the point at which an argument turns from merely losing to losing and sanctionable, ... courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted).

Here, resolving all doubts in favor of plaintiff, the signer of the pleading, the Court concludes that plaintiff's conduct does not warrant sanctions. As a threshold matter, the Court notes that plaintiff is proceeding *pro se.* Although the Court is mindful that *pro se* litigants are not immune from sanctions, "the court may consider the special circumstances of litigants who are untutored in the law." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, (2d Cir. 1989); *see Powers v. Duckworth*, No. 90-2492, 1995 WL 496751, at \*2 (7th Cir. Aug. 17, 1995) ("[P]ro se status can be considered as a possible mitigating factor, as can the special circumstances that can arise in *pro se* litigation." (collecting cases) ); *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989) ("Rule 11 applies to *pro se* plaintiffs, but the court must take into account the plaintiff's *pro se* status when determining whether the filing was reasonable."); *see also Pryzina v. Ley*, 813 F.2d 821, 823-24 (7th Cir. 1987) (noting that what is obvious to an attorney may not be obvious to a *pro se* litigant); *Cory v. Fahlstrom*, No. 04-4075-RDR, 2004 WL 3186242, at \*2 (D. Kan. Dec. 8, 2004) ("A litigant's *pro se* status may certainly be considered when determining whether to impose Rule 11

Case 6:26-cv-00070-MAD-MJK   Document 25   Filed 03/17/26   Page 73 of 88

McCluskey v. New York State Unified Court System, Not Reported in Fed. Supp. (2010)
2010 WL 11632696

sanctions."); *cf. Haines v. Kerner*, 404 U.S. 519, 520 (1971) (stating that pleadings filed by *pro se* litigants should be reviewed under a "less stringent" standard). The Court does not expect litigants proceeding *pro se* to grasp complex legal concepts, including the grounds upon which the Court relied to dismiss plaintiff's claims—in this case, failure to allege state action on the part of private defendants and the *Rooker-Feldman* doctrine—with the same level of understanding as attorneys. [2]

[2] *See, e.g., Noel v. Hall*, 341 F.3d 1148, 1162 (9th Cir. 2003) ("It is commonplace for the lower federal courts to complain that the *Rooker-Feldman* doctrine is difficult to apply."); *Gottfried v. Med. Planning Servs., Inc.*, 142 F.3d 326, 330 (6th Cir. 1998) ("*Rooker-Feldman* stands for the simple (yet nonetheless confusing) proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court....").

**\*2** The fact that plaintiff's claims were dismissed in entirety does not automatically warrant the imposition of sanctions in this case. *See, e.g., Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *see also Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987) (finding Rule 11 sanctions unwarranted, even when "[t]he evidence [plaintiff] presented not only failed to indicate discriminatory treatment, but instead revealed that [plaintiff] received several salary increases and promotions during his tenure. [Plaintiff] made no showing that other similarly situated members of the unprotected class were treated preferentially nor did he present evidence of retaliation. Under these circumstances, it is apparent that [plaintiff's] claim may be characterized as without foundation, but there is no evidence that he was in bad faith in bringing the claim, or that it was brought for any purpose other than to receive what he thought he was entitled to under the law."); *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851(NGG), 2007 WL 1026411, at \*5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90 Civ. 8280 (JFK), 1992 WL 36129, at \*4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak."). *See generally Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (warning against the use of "hindsight logic" that "because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation"). [3]

[3] The Court further notes that the Court dismissed plaintiff's complaint *sua sponte*, thereby obviating the necessity of the Gabor defendants filing and litigating a time consuming or costly motion to dismiss in this case.

In sum, there is insufficient basis to conclude that plaintiff filed this action in bad faith or that any other grounds for sanctions are present. The Court, however, is mindful that "[d]uplicative litigation is, to be sure, clearly impermissible, and plaintiff must understand that further filing of overlapping pleadings may require sanctions." *Soling v. N. Y. State*, 804 F. Supp. 532, 539 (S.D.N. Y. 1992). Thus, the Court concludes that "sanctions are inappropriate unless further overlapping lawsuits are filed." *Id.* at 538; *see also Cory v. Fahlstrom*, 143 F. App'x 84, 88 (10th Cir. 2005). Accordingly, the Gabor defendants' motion for sanctions under Rule 11 is denied.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11632696

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Defendants' Memorandum of Law in Support of its F.R.C.P. Rule 11 Motion**<br>MCCLUSKEY, v. NEW YORK STATE UNIFIED COURT SYSTEM et al.<br>2010 WL 3166418 | PDF | E.D.N.Y. | June 29, 2010 | Motion |
| **2. Docket 2:10-CV-02144**<br>McCluskey v. New York State Unified Court System et al | — | E.D.N.Y. | May 11, 2010 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (5)**

**Direct History (2)**

1. McCluskey v. New York State Unified Court System
2010 WL 11632696 , E.D.N.Y. , July 09, 2010

*Reconsideration Denied by*

2. McCluskey v. New York States Unified Court System
2010 WL 11632697 , E.D.N.Y. , July 27, 2010

**Related References (3)**

3. McCluskey v. New York State Unified Court System
2010 WL 2558624 , E.D.N.Y. , June 17, 2010

*Affirmed by*

4. McCluskey v. New York State Unified Court System
442 Fed.Appx. 586 , 2nd Cir.(N.Y.) , Sep. 07, 2011

*Certiorari Denied by*

5. McCluskey v. New York State Unified Court System
565 U.S. 1208 , U.S. , Feb. 21, 2012

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4054860

2018 WL 4054860
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Robert ZIMMERMAN, Plaintiff,
v.
UBS AG et al., Defendant.

17-CV-4503 (JMF)
|
Signed 08/24/2018

**Attorneys and Law Firms**

Robert Zimmerman, Hampstead, NC, pro se.

David L. Goldberg, Craig Andrew Convissar, Katten Muchin Rosenman, LLP, Gary R. Studen, Joshua Schiller, Boies, Schiller & Flexner LLP, Richard T. Marooney, Jr., King & Spalding LLP, New York, NY, Robyn Crowther, Boies Schiller Flexner LLP, Los Angeles, CA, for Defendant.

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge

**\*1** Plaintiff Robert Zimmerman, proceeding *pro se*, brings suit against UBS AG and various affiliated entities and individuals (collectively, the "UBS Defendants"), Ernst & Young LLP and various affiliated entities and individuals (together, the "E&Y Defendants"), and Charles Schwab & Co., Inc. and two associated individuals (the "Schwab Defendants"). Zimmerman alleges a total of twelve claims —including fraudulent inducement, aiding and abetting securities fraud, and unjust enrichment—stemming from his investment in a security issued and underwritten by UBS (the "Monthly Pay 2xLeveraged Exchange Traded Access Security," referred to by the parties by its call sign, "CEFL"). (Docket No. 65 ("Am. Compl."), ¶¶ 200, 816-957; *see id.* Ex. 2, at 88). [1] Now pending are five motions: motions by the Schwab Defendants to compel arbitration and for sanctions (Docket Nos. 19, 23), motions by the E&Y Defendants and the UBS Defendants to dismiss (Docket Nos. 72, 75), and a motion by Zimmerman for sanctions (Docket No. 40). For the following reasons, the motions to compel arbitration and to dismiss are granted, while the motions for sanctions are denied.

[1] Specifically, CEFL was issued by UBS AG and sold by UBS Securities LLC. (*See* Docket No. 62, Ex. 5, at 3). For convenience, the Court refers to these and related entities collectively as "UBS."

BACKGROUND

The material facts are not significantly disputed. Nevertheless, the following relevant facts, which are taken from the Amended Complaint, documents it incorporates, and matters of which the Court may take judicial notice, are construed in the light most favorable to Zimmerman. *See, e.g., Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). Zimmerman alleges that, in 2013, he invested in the CEFL security through his Schwab account after reading UBS's "Product Supplement." (Am. Compl. ¶¶ 200, 459-60). Zimmerman "continued investing in CEFL until approximately April 2015," when he sold all of his shares in the security. (*Id.* ¶ 459). Zimmerman claims that he was fraudulently induced to invest in CEFL—an "investment [which] would never have occurred had [Zimmerman] been aware of UBS's vast criminal history"—and that he suffered losses of "approximately $180,000-$400,000" as a result. (*Id.* ¶¶ 460, 541).

In January 2016, Zimmerman filed an arbitration claim with respect to the CEFL investment against UBS Financial Services and Schwab before the Financial Industry Regulatory Authority ("FINRA"). (*See* Docket No. 21 ("Crowther Decl."), Ex. 1 ("FINRA Claim") ). In that proceeding, Zimmerman contended that UBS had defrauded him by concealing certain risks and investigations into UBS's business practices. (*Id.* at 2-6). UBS responded by filing for an injunction in the United States District for the Eastern District of North Carolina to prohibit Zimmerman from pursuing arbitration. *See UBS Fin. Servs., Inc. v. Zimmerman*, No. 5:16-CV-155-FL, 2016 WL 7017278, at \*1 (E.D.N.C. Dec. 1, 2016). Zimmerman responded with counterclaims against UBS, asserting—as he does here— securities fraud and negligent misrepresentation. *Id.* The District Court dismissed Zimmerman's counterclaims, *see id.*, and later granted UBS's injunction, finding that UBS had no arbitration agreement with Zimmerman and thus could not be forced to participate in the FINRA arbitration, *see UBS Fin. Servs., Inc. v. Zimmerman*, No. 5:16-CV-155-FL, 2017 WL 2963445, at \*3 (E.D.N.C. July 11, 2017).

**\*2** In the meantime, in March 2017, Schwab and Zimmerman executed a Confidential Settlement Agreement and General Release settling the claims brought in arbitration. (Crowther Decl., Ex. 5 ("Settlement Agreement") ). Per the terms of that agreement, Schwab agreed to pay Zimmerman $5,000 "as full and final settlement of the Dispute," defined as the "dispute ... between Schwab and [Zimmerman] regarding [Zimmerman's Schwab account], as more fully described in FINRA Arbitration Case No. 15-03460, styled *Bob Zimmerman v. UBS Financial Services, Inc. and Charles Schwab & Co., Inc.*" (*Id.* at 1). In exchange for that payment, Zimmerman agreed to dismiss his arbitration claims with prejudice and "to release and forever discharge Schwab" and its affiliates "from any and all claims ..., whether now known or unknown, suspected or unsuspected, which he ever had, owned or held or now has, owns or holds, arising out of or in any way connected with the Dispute, with Schwab, or with Schwab's handling or administration of the Account from the date the Account was opened to the present." (*Id.* at ¶ 3). The parties also agreed to resolve any disputes "regarding the meaning or interpretation of [the] Agreement, or the rights and obligations of any of the parties hereto," through "binding arbitration." (*Id.* ¶ 12).

### DISCUSSION

As noted, there are five motions now pending: the Schwab Defendants' motion to compel arbitration, the E&Y Defendants' and the UBS Defendants' motions to dismiss, the Schwab Defendants' motion for sanctions, and Zimmerman's own motion for sanctions. The Court addresses them in that order.

### A. The Schwab Defendants' Motion to Compel Arbitration

The Schwab Defendants do not move to dismiss Zimmerman's claims, but move instead, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration. (Docket No. 23; *see* Docket No. 24, at 7-8). In evaluating a motion to compel arbitration, a district court must apply the summary judgment standard, and thus may grant the motion only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." *Cohen v. UBS Fin. Servs., Inc.*, 12-CV-2147 (BSJ) (JLC), 2012 WL 6041634, at \*1 (S.D.N.Y. Dec. 4, 2012) (quoting *Green Tree Fin.*

*Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ). To decide "whether the parties agreed to arbitrate a certain matter" for purposes of the FAA, a court must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Cohen*, 2012 WL 6041634, at \*2 (quoting *LaVoice v. UBS Fin. Servs., Inc.*, No. 11-CV-2308 (BSJ) (JLC), 2012 WL 124590, at \*2 (S.D.N.Y. Jan. 13, 2012) ); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

Although there is a general presumption that courts, not arbitrators, decide issues of arbitrability, *see Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009), this presumption can be rebutted with "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator," *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks omitted). "Clear and unmistakable evidence exists when an arbitration clause explicitly delegates arbitrability determinations to the arbitrator." *Arshad v. Transp. Sys., Inc.*, 183 F. Supp. 3d 442, 446 (S.D.N.Y. 2016).

Applying those standards here, the Court grants the Schwab Defendants' motion to compel arbitration. First, to the extent that Zimmerman brings claims under his initial agreement with Schwab, the arbitration clause in that agreement unambiguously requires that any and all disputes—including disputes about whether or which claims must go to arbitration in the first instance—be arbitrated. It provides, in relevant part, as follows:

> **\*3** Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab

Case 6:26-cv-00070-MAD-MJK     Document 25     Filed 03/17/26     Page 78 of 88

Zimmerman v. UBS AG, Not Reported in Fed. Supp. (2018)

2018 WL 4054860

account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers ..., including any controversy over the arbitrability of a dispute, will be settled by arbitration.

(Docket No. 25 ("Schiller Decl."), Ex. 1 ("Schwab Agreement"), at § 15). Second, to the extent that Zimmerman brings claims relating to the March 2017 Settlement Agreement, the upshot is the same, as that agreement provides that "[t]he parties agree that any dispute regarding the meaning or interpretation of [the] Agreement, or the rights and obligations of any of the parties hereto, shall be resolved through binding arbitration." (Settlement Agreement ¶ 12). The bottom line is that Zimmerman cannot (and does not) dispute that his claims in this case are either related to "transactions in the Account or any other Schwab account," (Schwab Agreement § 15), or related to "the rights and obligations" of the parties under the Settlement Agreement, (Settlement Agreement ¶ 13)—if not related to both. It follows that the Schwab Defendants' motion to compel arbitration must be and is GRANTED. [2]

[2] Zimmerman contends that he does not recall assenting to the Schwab Agreement and that FINRA is inherently discriminatory and unfair to him. (Docket No. 31, at 6, 10). Zimmerman fails to support his first argument with any evidence; in any event, it is belied by both his initiation of arbitration before FINRA in January 2016 and his contention that he was coerced into signing the Schwab Agreement. (*See id.* at 7). Zimmerman's claim that FINRA is unfairly biased against him is "too speculative and attenuated to justify invalidation of all contemplated arbitration, or to enjoin it before it commences." *Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*, 698 F. Supp. 504, 517 (S.D.N.Y. 1988) (rejecting a similar claim).

### B. The UBS Defendants' and E&Y Defendants' Motions to Dismiss

Next, the UBS Defendants and the E&Y Defendants separately move to dismiss the Amended Complaint pursuant to Rules 4(m), 8, 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Docket No. 73

("E&Y Br."), at 5; Docket No. 76 ("UBS Br."), at 1). While the two motions do not overlap entirely, they share at least one compelling argument: that CEFL's offering documents included or incorporated the very disclosures that Zimmerman now complains were lacking. (*See* E&Y Br. 12-13; UBS Br. 7-9). These disclosures are fatal to each of Zimmerman's claims, and require dismissal of those claims in their entirety against the UBS Defendants and the E&Y Defendants. Accordingly, the Court need not and does not reach those Defendants' remaining arguments.

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319 (S.D.N.Y. 2012). A court may not dismiss claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570. Where, as here, a plaintiff proceeds *pro se*, his pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "Nonetheless, a *pro se* litigant must still state a plausible claim for relief. Put another way, the Court's duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Thomas v. N.Y.C. Dep't of Educ.*, No. 15-CV-8934 (JMF), 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks, citation, and alterations omitted).

**\*4** Here, each of Zimmerman's twelve claims turns on the concealment of "UBS's vast history of criminality" in the CEFL prospectus. (Am. Compl. ¶ 820; *see also id.* ¶¶ 835, 843, 849, 871, 892, 906, 930, 939, 949, 957). In each of these counts, Zimmerman charges that Defendants "conceal[ed] 26 material facts regarding CEFL." (*Id.* ¶ 831). But these "26 material facts" (which, in the Court's parsing of the Amended Complaint, seem to be closer to ten facts,

2018 WL 4054860

*see id.* ¶¶ 335-44) were either adequately disclosed or are too speculative to require disclosure. Zimmerman relies principally on UBS's publicly filed 2015 Annual Report, in which UBS disclosed certain misconduct, as evidence of material facts that were undisclosed in 2013, when he invested in CEFL. (*See, e.g., id.* ¶¶ 221, 240). But UBS made nearly identical disclosures in materials available to Zimmerman in 2013, and which Zimmerman concedes he read. (*See, e.g., id.* ¶ 459). In connection with the CEFL security, UBS issued a Product Supplement, which summarized the product and described certain risk factors inherent to CEFL. (Docket No. 74 ("O'Brien Decl."), Ex. A ("CEFL Product Supplement") ). For instance, UBS warned that CEFL is "not secured debt and [is] significantly riskier than ordinary unsecured debt securities." (CEFL Product Supplement S-18). The Product Supplement also incorporated and attached a general prospectus about UBS securities. (CEFL Product Supplement i ("You should rely only on the information incorporated by reference or provided in this product supplement or the accompanying prospectus."); *see also* O'Brien Decl., Ex. B ("UBS Prospectus") ). In the UBS Prospectus, UBS warned that securities like CEFL "may present a high level of risk, and those who invest in some indexed securities may lose their entire investment." (UBS Prospectus 52).

Significantly, the UBS Prospectus also explicitly referenced and incorporated UBS's 2013 Annual Report. Under a heading entitled "Risk Factors Relating to UBS and Other Considerations Relating to the Securities," the UBS Prospectus warned investors: "For a discussion of important business and financial risks relating to UBS AG, please see 'Risk Factors' in Part I, Item 3D of our Annual Report ... which is incorporated in this prospectus by reference." (UBS Prospectus 2; *see also id.* at 3 ("More detailed information about [risk] factors is set forth in ... UBS's Annual Report...."); *id.* at 4 ("We incorporate by reference in this prospectus: UBS AG's Annual Report on Form 20-F for the year ended December 31, 2013....") ).[3] UBS's 2013 Annual Report, in turn, sufficiently and expressly disclosed the alleged misconduct of which Zimmerman now complains. UBS disclosed that it "agreed to pay a fine of USD 500 million" as part of a settlement related to the Department of Justice's investigation of benchmark interest rates. (O'Brien Decl., Ex. C ("UBS 2013 Annual Report"), at 422). UBS also disclosed, *inter alia*, that it was under investigation for illicitly soliciting clients in France, that it was fending off significant litigation relating to residential mortgage-backed securities, that it had been sued in connection with fraud relating to Bernie Madoff, and that it had paid fines in connection with

proceedings in Italy. (*Id.* at 416-25). In sum, UBS disclosed that it "operates in a legal and regulatory environment that exposes it to significant litigation and similar risks arising from disputes and regulatory proceedings." (*Id.* at 416).

3    Zimmerman contends that UBS's disclosures were "buried hundreds of pages deep" and, thus, "conceal[ed] or obscure[d] the information sought to be disclosed." (Docket No. 83, at 17). That contention, however, is belied by the prominence that the disclosures received in UBS's materials, including the multiple references to the ten-page section on UBS's litigation and regulatory exposure on the second and third pages of UBS's Prospectus. (*See, e.g.*, UBS Prospectus 2 ("For a discussion of important business and financial risks relating to UBS AG, please see 'Risk Factors' in Part I, Item 3D of our Annual Report....") ). Thus, the Court concludes, the disclosures were not inscrutable or hidden from Zimmerman's review. *See, e.g., I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 763 (2d Cir. 1991) (rejecting an analogous argument where the section containing relevant disclosures was listed in the Table of Contents and where the prospectus "unambiguously communicate[d] the importance of reading all relevant material contained within the prospectus").

Given Zimmerman's express allegation (*see* Am. Compl. ¶ 459) that he relied on the UBS Product Supplement—which attached and incorporated the UBS Prospectus and the 2013 Annual Report—his contention that Defendants "intentionally concealed the sums UBS paid in fines" (Am. Compl. ¶ 338) is not plausible. *See, e.g., In re UBS AG Sec. Litig.*, No. 07-CV-11225 (RJS), 2012 WL 4471265, at *30 (S.D.N.Y. Sept. 28, 2012) (relying on a UBS Annual Report, which was incorporated into a security offering, to conclude that UBS "adequately met its obligation" by disclosing certain uncharged conduct), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 350 (S.D.N.Y. 2005) (dismissing a securities fraud claim on the ground that it was "premised on facts that were adequately disclosed"). Further, Zimmerman's claim that UBS concealed the fact that the Department of Justice revoked a non-prosecution agreement with UBS is even more implausible, as that agreement was not revoked until May 2015—well after Zimmerman invested in CEFL. (*See* O'Brien Decl., Ex. D ("UBS 2015 Annual Report"),

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 80 of 88

Zimmerman v. UBS AG, Not Reported in Fed. Supp. (2018)
2018 WL 4054860

at 644). UBS's adequate disclosure of the material facts that Zimmerman identifies is fatal to each of Zimmerman's causes of action. (*See, e.g.*, Am. Compl. ¶ 820 (arguing that Defendants "conspired to conceal UBS's vast history of criminality"); *id.* ¶ 835 (arguing that Defendants aided and abetted securities fraud by omitting "the 26 material risk factors from the Product Supplement"); *id.* ¶ 842 (arguing that Defendants fraudulently concealed material information) ). Because UBS adequately disclosed the material facts that Zimmerman identifies, the UBS Defendants' and the E&Y Defendants' motions to dismiss are GRANTED.

## C. The Motions for Sanctions

**\*5** Finally, the Schwab Defendants and Zimmerman have filed competing motions for sanctions. First, the Schwab Defendants argue that Zimmerman should be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure and made to pay Schwab's attorneys' fees "[a]s a deterrent against future duplicative and vexatious litigation." (Docket No. 20 ("Schwab's Sanctions Mem."), at 1). The Schwab Defendants contend that they repeatedly warned Zimmerman that he had already settled his claims against Schwab and that any dispute over the settlement must be, per the Settlement Agreement, resolved in arbitration. (*Id.* at 2). Second, Zimmerman seeks sanctions against the Schwab Defendants on the ground that they violated the California Evidence Code by disclosing the Settlement Agreement. (Docket No. 40, at 3).

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal citations and quotation marks omitted). Rule 11 applies to both attorneys and *pro se* litigants in guarding against frivolous, vexatious, or scurrilous lawsuits. *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989). Indeed, the fact that a litigant appears *pro se* "does not shield him from Rule 11 sanctions because one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Malley v. N.Y.C. Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). Nevertheless, "the court may consider the special circumstances of litigants who are untutored in the law." *Simpson v. Putnam Cty. Nat'l Bank of Carmel*, 112 F. Supp.

2d 284, 292 (S.D.N.Y. 2000) (quoting *Maduakolam*, 866 F.2d at 56). "Courts impose Rule 11 sanctions with discretion and caution," particularly when it comes to *pro se* litigants. *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 119 (E.D.N.Y. 2005) (citing *Caisse Nationale de Credit Agricole-CNCA v. Valcorp., Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) ).

Applying those standards, the Court is tempted to impose sanctions on Zimmerman for filing this lawsuit against the Schwab Defendants despite the clear arbitration provisions in both the Schwab Agreement and the Settlement Agreement. Nevertheless, exercising its discretion, the Court declines to do so, primarily because Zimmerman is proceeding *pro se. See, e.g., id.* (declining to impose sanctions on a *pro se* plaintiff even though the plaintiff's "petition [was] frivolous and unwarranted"); *Long v. Key Bank, N.A.*, No. 08-CV-6497 (MAT), 2009 WL 2580101, at \*3 n.2 (W.D.N.Y. Aug. 19, 2009) (declining to impose sanctions on a *pro se* plaintiff while noting that, "[h]ad [plaintiff's] claims been raised by an attorney," the Court likely would have imposed sanctions). Nevertheless, Zimmerman is warned—again—that the filing of another frivolous action or motion relating to the claims he presses here, and previously pressed in arbitration and the District of North Carolina, may result in monetary sanctions under Rule 11.

By contrast, Zimmerman's own motion for sanctions is plainly frivolous and must be denied. Indeed, it would be absurd to suggest, let alone hold, that a defendant who is sued may not submit an otherwise confidential settlement agreement to the court in aid of its argument that the lawsuit is barred by a release or an arbitration clause. The California Evidence Code—upon which Zimmerman relies—does not suggest otherwise. Putting aside the question of whether the state's Code even applies in federal court, the sections of the Code cited by Zimmerman concern communications and agreements in the context of meditation. *See* Cal. Evid. Code. §§ 1119-1123. Moreover, the Code expressly provides that a "written settlement agreement prepared in the course of, or pursuant to, a mediation, is *not* made inadmissible, or protected from disclosure, ... if the agreement is signed by the settling parties and ... [t]he agreement provides that it is enforceable or binding or words to that effect." *Id.* § 1123 (emphasis added). That is the case here, as the Settlement Agreement states that it "shall be interpreted, *enforced*, and governed by and under the laws of the State of California." (Settlement Agreement ¶ 11 (emphasis added) ). Thus, the Schwab Defendants plainly did nothing wrong in submitting the Settlement Agreement in support of their

argument that Zimmerman had released the claims he brings here and agreed to arbitrate. *See Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir. 1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.").

### CONCLUSION

**\*6**  For the reasons discussed above, the Schwab Defendants' motion to compel arbitration, the UBS Defendants' motion to dismiss, and the E&Y Defendants' motion to dismiss are GRANTED, and the two motions for sanctions are DENIED.

The Court declines to *sua sponte* grant Zimmerman leave to amend his complaint. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, Zimmerman was already granted leave to amend the complaint to cure deficiencies raised by the UBS Defendants' and the E&Y Defendants' motions to dismiss and was explicitly cautioned that he would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (Docket No. 35). Additionally, many—if not all—of the problems with Zimmerman's claims are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Finally, Zimmerman "has

not requested permission to file [an amended complaint], nor has he given any indication that he is in possession of facts that would cure the problems" identified in the instant opinion dismissing his claims. *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at \*15 (S.D.N.Y. Aug. 15, 2014). Accordingly, the Court declines to grant Zimmerman leave to amend his complaint for a second time.

Finally, in light of the fact that the only claims remaining—against the Schwab Defendants—are subject to arbitration, this action is stayed pending resolution of the arbitration. *See Katz*, 794 F.3d at 345 ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay [is] requested."). That said, the Court sees no reason to keep the case open pending arbitration. Accordingly, the Clerk of Court is directed (1) to terminate Docket Nos. 19, 23, 40, 72, and 75; (2) to terminate all Defendants as parties, *except for* the Schwab Defendants (namely, Charles Schwab & Co., Inc., Charles Schwab, and Walt Bettinger); and (3) to administratively close the case, without prejudice to either Zimmerman or the Schwab Defendants moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4054860

---

**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (11)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1. Appellate Reply Brief**<br>Robert ZIMMERMAN, Plaintiff - Appellant, v. UBS AG, UBS Group AG, UBS Securities LLC, UBS Financial Services, Inc., UBS Americas Holding L.L.C., Charles Schwab & Co., Inc., Ernst & Young LLP, Charles Schwab, Walt Bettinger, Axel Weber, Michel Demare, Tom Naritil, Markus Diethelm, Sergio Ermotti, William Parrett, Ann Godbeher, Isabelle Romy, Beatrice Weder di Mauro, Reto Francioni, Robert McCann, Marie-Laure Delaure, Troy Butner, Defendant - Appellees.<br>2019 WL 8886063 | PDF | C.A.2 | May 09, 2019 | Brief |
| **2. Reply Memorandum of Law in Further Support of Motion to Dismiss of Defendant Ubs Entities and Individuals**<br>Robert ZIMMERMAN, Plaintiff, v. UBS AG et al., Defendants.<br>2018 WL 11304970 | — | S.D.N.Y. | Apr. 06, 2018 | Motion |
| **3. Reply in Support of Ernst & Young LLP's Motion to Dismiss Plaintiff's First Amended Complaint**<br>Robert ZIMMERMAN, Plaintiff, v. UBS AG et al., Defendants.<br>2018 WL 11304971 | — | S.D.N.Y. | Apr. 02, 2018 | Motion |
| **4. Memorandum of Law in Support of Motion to Dismiss of Defendant Ubs Entities and Individuals**<br>Robert ZIMMERMAN, Plaintiff, v. UBS AG et al., Defendants.<br>2018 WL 11304972 | — | S.D.N.Y. | Jan. 31, 2018 | Motion |
| **5. Memorandum of Law in Support of Ernst & Young LLP's Motion to Dismiss Plaintiff's First Amended Complaint**<br>Robert ZIMMERMAN, Plaintiff, v. UBS AG et al., Defendants.<br>2018 WL 11304974 | — | S.D.N.Y. | Jan. 31, 2018 | Motion |
| **6. Memorandum of Law in Support of Motion to Dismiss of Defendant Ubs Entities and Individuals**<br>Robert ZIMMERMAN, Plaintiff, v. UBS AG et al., Defendants.<br>2017 WL 11607331 | — | S.D.N.Y. | Dec. 08, 2017 | Motion |
| **7. Memorandum of Law in Support of Ernst & Young LLP's Motion to Dismiss**<br>Robert ZIMMERMAN, Plaintiff, v. UBS AG et al., Defendants.<br>2017 WL 11607329 | — | S.D.N.Y. | Oct. 26, 2017 | Motion |

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **8. Memorandum of Law in Support of Defendants Charles Schwab & Co., Inc., Charles Schwab and Walt Bettinger's Motion to Compel Arbitration**<br>Robert ZIMMERMAN, Plaintiff, v. UBS AG, UBS Group AG, UBS Securities, LLC, UBS Financial Services, Inc., UBS Americas Holding LLC, Charles Schwab & Co., Inc., Ernst & Young LLP, Charles Schwab, Walt Bettinger, Axel Weber, Michel Demare, Tom Naritil, Markus Diethelm, Sergio Ermotti, William Parrett, Ann Godbeher, Isabelle Romy, Beatrice Weder Di Mauro, Reto Francioni, Robert Mccann, Marie-Laure Delaure, Tory Butner, Defendants.<br>2017 WL 11607330 | — | S.D.N.Y. | Sep. 22, 2017 | Motion |
| **9. Docket 20-885**<br>ZIMMERMAN v. UBS AG ET AL | — | C.A.2 | Mar. 10, 2020 | Docket |
| **10. Docket 18-3185**<br>ZIMMERMAN v. UBS AG | — | C.A.2 | Oct. 24, 2018 | Docket |
| **11. Docket 1:17-CV-04503**<br>Zimmerman v. UBS AG et al | — | S.D.N.Y. | June 12, 2017 | Docket |

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (3)**

1. Zimmerman v. UBS AG
   2018 WL 4054860 , S.D.N.Y. , Aug. 24, 2018

*Appeal Dismissed by*

2. Zimmerman v. UBS AG
   789 Fed.Appx. 914 , 2nd Cir.(N.Y.) , Jan. 14, 2020

*AND Appeal Dismissed by*

3. Zimmerman v. UBS AG
   2020 WL 5407780 , 2nd Cir.(N.Y.) , July 23, 2020

**WESTLAW** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

U.S. Bank National Association v. O'Hara, Not Reported in Fed. Supp. (2025)
2025 WL 358419

2025 WL 358419
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

U.S. BANK NATIONAL ASSOCIATION, Plaintiff,
v.
Edward O'HARA, Defendant.

24-CV-8459 (JPO)
|
Signed January 31, 2025

**Attorneys and Law Firms**

Sirui Sherry Xia, Hinshaw & Culbertson LLP, New York, NY, for Plaintiff.

Edward O'Hara, Greenwich, CT, Pro Se.

ORDER

J. PAUL OETKEN, District Judge:

**\*1**  Defendant Edward O'Hara purports to remove this case —originally a foreclosure action filed in Connecticut state court—from the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1446(a). (*See* ECF No. 1 at 1.) Before the Court is Plaintiff U.S. Bank National Association's motion to remand the case and for attorney's fees. (ECF No. 6.) For the reasons that follow, this action is dismissed *sua sponte*, the motion to remand is denied as moot, and the motion for attorney's fees is denied.

**I. Motion for Remand**
Plaintiff moves this Court to remand the case, arguing that O'Hara has failed to satisfy the requirements of Section 1446(a). (*See* ECF No. 8). Plaintiff is correct. Section 1446(a) provides only for removal of a "civil action from a *State* court," not another federal court. 28 U.S.C. § 1446(a) (emphasis added). Construing O'Hara's notice of removal as a motion for a transfer of venue would aid him no further, as such motions must be filed in the transferor court, rather than the transferee court. *See* 28 U.S.C. § 1404. Finally, even construing O'Hara's notice of removal as purporting to remove the case from the underlying foreclosure action pending in Superior Court of Connecticut, Judicial District of Samford at Samford, would not render removal to this Court proper, as a state court action may be removed only to "the

district court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1404(a). [1]

[1]  O'Hara's argument that exclusive jurisdiction over this action lies with the Bankruptcy Court for the Southern District of New York was correctly rejected by that court as frivolous. *In re Lehman Bros. Holdings Inc.*, No. 08-13555, 2025 WL 261959, at \*7-8 (Bankr. S.D.N.Y. Jan. 21, 2025) ("This case fits neatly with the clear line of precedent in this Circuit barring relitigating the foreclosure actions in federal courts. No matter the (questionable, in this case) merits of O'Hara's claims, this Court lacks subject matter jurisdiction to hear every one of the claims he alleges because they are all, in substance, attempts to appeal the Foreclosure Judgment.").

Despite the styling of Plaintiff's motion, this Court cannot remand a case to another federal court. Therefore, this action is dismissed *sua sponte* without prejudice because O'Hara presents no non-frivolous basis for removal under 28 U.S.C. § 1446(a). *See Pillay v. I.N.S.*, 45 F.3d 14, 16-17 (2d Cir. 1995) (citing *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 307-08 (1989)) (explaining the general principle that courts have inherent authority to dismiss frivolous cases that present "no arguably meritorious issue for ... consideration"); *Decatus v. City of New York*, No. 24-CV-2224, 2024 WL 2137857, at \*1 (S.D.N.Y. May 13, 2024) ("The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fees, if it determines that the action is frivolous.") (citing *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam)). This order shall have no effect on the maintenance of this action in any other court. [2]  Accordingly, the motion to remand is denied as moot.

[2]  Even though the Court does not formally remand the action, 28 U.S.C. § 1446(d) shall not impede the progress of this case in any other court as of a result of the proceedings here because this case was never properly removed "from a State court," *cf.* 28 U.S.C. § 1446(a).

**II. Attorney's Fees**
**\*2**  Plaintiff moves this Court to award costs and attorney's fees it incurred in opposing O'Hara's attempt to remove the action to this Court. (*See* ECF No. 6 at 17-18.) Such an award is permitted by 28 U.S.C. § 1447(c) where "the

Case 6:26-cv-00070-MAD-MJK    Document 25    Filed 03/17/26    Page 87 of 88

U.S. Bank National Association v. O'Hara, Not Reported in Fed. Supp. (2025)
2025 WL 358419

removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Though O'Hara clearly lacked such a basis —as he sought removal from another federal court and in the incorrect district in plain contravention of Section 1446 —courts generally decline to award costs and fees against *pro se* defendants under Section 1447(c). *See, e.g., Bleiberg v. Altvater*, No. 01-CV-11507, 2002 WL 1339097, at *2 (S.D.N.Y. June 19, 2002) ("With respect to plaintiff's request for attorney fees and costs under 28 U.S.C. § 1447(c), I decline to find any here, although perhaps only in light of the defendant's *pro se* status."); *see also Archway IP L. PLLC v. D3Holdings, LLC*, No. 19-CV-404, 2019 WL 8886224, at *1 n.1 (E.D. Va. July 1, 2019) (collecting cases). The Court concludes that O'Hara's *pro se* status is an "unusual circumstance[ ] [that] warrant[s] a departure" from the objective reasonableness test for awarding fees under Section 1447(c). *See Martin*, 546 U.S. at 141. Accordingly, the motion for attorney's fees and costs is denied. However, O'Hara is cautioned that should he continue to make frivolous arguments in this Court "in bad faith, vexatiously, wantonly,

or for oppressive reasons," he may be subject to sanctions pursuant to this Court's inherent authority. *See Weiss v. Yotta Techs.*, No. 22-CV-8569, 2024 WL 4285849, at *4-5 (S.D.N.Y. Sept. 25, 2024).

## III. Conclusion

For the foregoing reasons, this action is DISMISSED. Plaintiff's motion for remand is DENIED AS MOOT. Plaintiff's motion for attorney's fees and costs is DENIED. All remaining motions in the case are DENIED AS MOOT.

Because this case was never properly removed to this Court, the notice of removal filed with this Court shall have no effect, by virtue of 28 U.S.C. § 1446(d), on any other proceeding.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2025 WL 358419

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

**History**

There are no History results for this citation.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.