**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
**(UTICA DIVISION)**

|  |  |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST,<br><br>     Plaintiff,<br><br>-against-<br><br>CARMINE P. AMELIO; PAUL A. AMELIO; ALFONSO AMELIO; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; QUICKEN LOANS, INC.,<br><br>     Defendants. | CASE NO.: 6:26-cv-0070 MAD/MJK<br>Trial By Jury Requested |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO**
**ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)**

**I. PRELIMINARY STATEMENT**

Defendants Carmine P. Amelio, Paul A. Amelio, and Alfonso Amelio respectfully move, pursuant to Fed. R. Civ. P. 59(e), to alter or amend the Memorandum-Decision and Order entered May 22, 2026 (Dkt. No. 34, the "Order"). This motion rests on four independent, each individually sufficient, grounds: (1) the Order commits a clear error of law by ordering dismissal with prejudice where 28 U.S.C. § 1447(c) mandates remand; (2) the Order fails to address whether the January 14, 2026 foreclosure sale — conducted the same day removal was filed — complied with the automatic stay of 28 U.S.C. § 1446(d); (3) the Order was entered without first resolving Defendants' pending and fully-briefed recusal motion, leaving an antecedent disqualification question unresolved before the merits were decided; and (4) the Order works manifest injustice by

dissolving, without notice or hearing, the only protection Defendants had against irreversible loss of their family home — and this manifest injustice is compounded by the fact, now established on this Court's own docket, that Defendants never received notice of the Order at all before its consequences took effect.

Each of these grounds, standing alone, warrants relief under Rule 59(e). Together, they compel it.

## II.  LEGAL STANDARD

A district court may alter or amend a judgment under Rule 59(e) to: (1) correct a clear error of law; (2) prevent manifest injustice; (3) account for newly discovered evidence; or (4) address an intervening change in controlling law. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The rule exists to permit district courts to correct their own errors before the burdens and delays of an appeal become necessary.

## III.  ARGUMENT

## A.  CLEAR ERROR OF LAW: 28 U.S.C. § 1447(c) MANDATES REMAND, NOT DISMISSAL WITH PREJUDICE

The Order's central directive — that Defendants' Notice of Removal "is DISMISSED with prejudice" — is contrary to the plain, mandatory text of the governing statute. 28 U.S.C. § 1447(c) provides:

> *"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."*

The word "shall" is mandatory, and the remedy specified — remand — is exclusive. The statute does not say "may be remanded or dismissed"; it says the case "shall be remanded." Congress chose this language deliberately: where a district court determines that it lacks subject matter jurisdiction over a removed action, the statute affords no discretion to select a different disposition. The text identifies one and only one consequence of a jurisdictional defect in a removed case — remand to the court from which the action was removed.

The distinction between remand and dismissal with prejudice is not academic. Remand returns Defendants to state court with their defenses and claims intact, including their ability to litigate the validity of service of process and the underlying judgment. Dismissal **with prejudice** purports instead to adjudicate the merits of claims that were never litigated, and creates a bar to any future assertion of them — including Defendants' claims regarding defective service of process under CPLR § 308(4), which go to the very validity of the underlying state court judgment. Where Congress has specified remand as the exclusive remedy for a jurisdictional defect, a judgment of dismissal with prejudice on that same ground is not a permissible substitute.

Notably, the Order itself **denies** Plaintiff's request for attorney's fees and costs under § 1447(c) (Dkt. No. 34). Fee-shifting under § 1447(c) is available only where removal lacked any objectively reasonable basis. The Order's own denial of fees reflects a determination that Defendants' removal was not objectively unreasonable. That determination is in tension with the Order's imposition of the far more severe remedy of dismissal with prejudice: a removal that does not warrant fee-shifting cannot simultaneously warrant the permanent, merits-foreclosing remedy of dismissal with prejudice. The Order should be amended to substitute remand to Oneida County Supreme Court for the dismissal with prejudice.

**B. CLEAR ERROR OF LAW: THE ORDER FAILS TO ADDRESS THE FORECLOSURE SALE CONDUCTED IN VIOLATION OF 28 U.S.C. § 1446(d)'S AUTOMATIC STAY**

Compounding the error addressed above, the Order does not address a separate and independent jurisdictional problem: the foreclosure sale of the Clinton Road property was conducted on January 14, 2026 — the same date on which Defendants filed their Notice of Removal in this action (Dkt. No. 1).

28 U.S.C. § 1446(d) provides, in plain and mandatory terms:

> *"Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."*

The statute's command is unambiguous: once removal is effected, the state court "shall proceed no further." Defendants' Motion to Enforce Removal of Stay and to Declare Post-Removal State Court Actions Null and Void (Dkt. No. 7), filed January 22, 2026, squarely raised this issue with respect to the January 14, 2026 sale. That motion was denied (Dkt. No. 25, adopted by Dkt. No. 34), but the denial did not address the threshold statutory question of whether a sale conducted on the very day removal was filed — before the state court could have had any opportunity to cease further proceedings — complies with § 1446(d).

This is not a question that can simply be subsumed within the dismissal of the removal itself. If the removal was timely and otherwise proper, the January 14, 2026 sale occurred in a state court proceeding that was statutorily required to halt no later than the moment removal was effected that

same day. The Order's silence on this point — dismissing the removal with prejudice while leaving entirely unaddressed whether the same-day sale complied with § 1446(d) — leaves a jurisdictional question unresolved that bears directly on whether Defendants have any remaining forum in which to challenge the sale at all. If the removal is dismissed with prejudice and the § 1446(d) question is never reached, Defendants are left with no court — state or federal — that has actually adjudicated whether the sale was conducted in violation of the automatic stay. Defendants respectfully request that this Court address this issue directly before any final disposition of the removal becomes effective.

## C.  CLEAR ERROR OF LAW: THE ORDER WAS ENTERED WITHOUT FIRST RESOLVING DEFENDANTS' PENDING RECUSAL MOTION

Defendants filed their Motion to Recuse Magistrate Judge Mitchell J. Katz (Dkt. No. 31) on May 4, 2026. Plaintiff filed opposition on May 26, 2026 (Dkt. No. 35) — **after** the Order issued. The Order itself, entered May 22, 2026, adopts Magistrate Judge Katz's Order and Report-Recommendation (Dkt. No. 25) **without addressing the recusal motion at all** — it is not granted, not denied, not held in abeyance. It is simply bypassed.

This sequence is itself a clear error of law. Defendants' Motion to Recuse was filed pursuant to 28 U.S.C. §§ 144 and 455, and squarely placed before the Court the question of whether Magistrate Judge Katz should be disqualified from further participation in this matter, including from the Order and Report-Recommendation he had already issued. That question is logically antecedent to any ruling adopting the recommendation of the judge whose disqualification is sought: if the recommending judicial officer should have been disqualified, the recommendation itself is called

into question, and a ruling adopting that recommendation without first resolving the disqualification challenge compounds rather than cures the problem.

Defendants' recusal motion is grounded in, among other things, the recommendation of dismissal with prejudice itself — a remedy beyond Magistrate Judge Katz's statutory authority under § 1447(c), and one that operated maximally in Plaintiff's favor. (Dkt. No. 31 at Ground 2.) The Order's adoption of that very recommendation, without first determining whether the recommending judicial officer should have been disqualified, places the cart before the horse. At minimum, this Court should resolve the recusal motion before any ruling adopting Dkt. No. 25 is permitted to stand, so that the question of disqualification is not rendered moot by the very ruling it was filed to prevent.

## D.  MANIFEST INJUSTICE: DISSOLUTION OF THE STATUS QUO ORDER WITHOUT NOTICE OR HEARING, COMPOUNDED BY DEFENDANTS' UNDISPUTED NON-RECEIPT OF THE ORDER ITSELF

The Order dissolves the Text Order of March 6, 2026 (Dkt. No. 20), which had required Plaintiff to "maintain the status quo as it exists as to the current title of the property until further order of this Court." This dissolution was entered without notice to Defendants, without an opportunity for Defendants to be heard, and without any stated finding of changed circumstances justifying removal of the protection.

This alone would raise serious due process concerns under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). But the procedural defect here goes further, and it is established on this Court's own docket without need for any disputed factual finding:

- The Clerk's Correction entered May 26, 2026, states without qualification: "Due to a postage meter failure on May 22, 2026, the order was not mailed to defendants by regular and certified mail on May 26, 2026."

- Dkt. No. 37 (entered June 17, 2026): certified mail addressed to Alfonso Amelio was returned "Not Deliverable as Addressed — Unable to Forward."

- Dkt. No. 38 (entered June 17, 2026): certified mail addressed to Carmine Amelio was returned "Not Deliverable as Addressed — Unable to Forward."

- Dkt. No. 39 (entered June 17, 2026): certified mail addressed to Paul Amelio was returned "Not Deliverable as Addressed — Unable to Forward."

These four docket entries, taken together and made by the Clerk of this Court rather than by Defendants, establish without dispute that **no Defendant received notice of the Order through any court-sanctioned channel** before its consequences — including dissolution of the status quo protection and the commencement of the Rule 11 show cause period — took effect. Defendants first learned of the Order's existence on or about June 17-18, 2026, upon reviewing the CM/ECF docket themselves, and they prepared and filed this motion promptly thereafter.

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties" before consequences attach to them. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). An order dissolving property protection and triggering a sanctions deadline cannot fairly take effect against parties who never received it through any fault of their own — and the record here shows the failure originated with the Court's own postage meter, not with anything Defendants did or failed to do. Enforcing the consequences of an order that was

never delivered, where the non-delivery is independently documented by the Clerk, is the paradigm of manifest injustice that Rule 59(e) exists to correct.

## E. THE RULE 11 SHOW CAUSE DIRECTIVE WAS NEVER SERVED ON DEFENDANTS AND THEREFORE NEVER BOUND THEM

Defendants respectfully submit that the Rule 11 show cause directive contained in the Order was never served on Defendants within the meaning of Fed. R. Civ. P. 5, and therefore the directive should not be treated merely as a deadline that may now be extended or reset. Service of an order setting a response deadline is a prerequisite to that deadline binding the recipient at all; where service never occurred, there is nothing to extend, because the obligation never attached in the first instance.

The show cause period was, by its own terms, fourteen days from the date of the Order — running, on its face, from May 22, 2026 to June 5, 2026. The Court's own docket establishes, without need for any disputed finding, that the Order was never served on any Defendant at any point during that fourteen-day window: the Clerk's Correction confirms the postage meter failure prevented mailing as originally scheduled, and Dkt. Nos. 37, 38, and 39 confirm that when certified mail was eventually sent, it was returned to the Court undelivered, marked "Not Deliverable as Addressed — Unable to Forward." Service was therefore never completed, and the fourteen-day period never began to run as to any Defendant.

A directive to show cause is fundamentally different from an ordinary case-management deadline. It places an affirmative burden on the recipient to act, on pain of sanctions, within a fixed window measured from service. Where service of the directive was never completed — through no fault of the recipient, and as established by the issuing court's own records — the response period cannot

be said to have ever commenced as to that recipient. *Mullane*, 339 U.S. at 314 (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties"). Defendants accordingly request that this Court not characterize the June 5, 2026 show cause deadline as merely "late" or in need of an extension, but rather recognize that, because service was never effectuated, the deadline never began to run and the directive never bound Defendants in the first instance. Should the Court conclude that inquiry into the circumstances of Defendants' removal remains warranted following resolution of this motion, Defendants respectfully request that any such inquiry proceed by way of a new show cause order, properly served on Defendants in accordance with Fed. R. Civ. P. 5, and affording Defendants a full and fair opportunity to respond from the date of actual, confirmed service.

## F.  THE STATUS QUO PROTECTION SHOULD BE IMMEDIATELY REINSTATED PENDING DECISION ON THIS MOTION

Regardless of the ultimate disposition of this motion, Defendants respectfully request that the status quo order (Dkt. No. 20) be reinstated as an interim measure while this motion is pending. The relevant equitable factors weigh decisively in Defendants' favor:

- Likelihood of success: Defendants have identified a clear statutory error (dismissal versus remand under § 1447(c)) and a clear procedural error (adoption of the R&R without resolving the pending recusal motion), either of which independently supports relief.

- Irreparable harm: If title to the property is transferred or further encumbered while this motion is pending, Defendants' rights are permanently and irreversibly extinguished. No subsequent ruling in their favor could restore the status quo once title has changed hands.

- Balance of hardships: Plaintiff has held the Referee's Report of Sale since January 14, 2026, and faces no comparable hardship from a brief continuation of the status quo while this timely motion is decided.

- No prejudice from a brief pause: A short period to resolve a properly and timely filed Rule 59(e) motion imposes no material cost on Plaintiff beyond the ordinary cost of litigation.

## IV.  CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant this motion and: (1) amend the May 22, 2026 Order to substitute remand to Oneida County Supreme Court for the dismissal with prejudice of Defendants' Notice of Removal, consistent with the mandatory text of 28 U.S.C. § 1447(c); (2) address whether the foreclosure sale conducted January 14, 2026 complied with the automatic stay of 28 U.S.C. § 1446(d) before any final disposition of the removal becomes effective; (3) address and decide Defendants' pending Motion to Recuse Magistrate Judge Katz (Dkt. No. 31) before any further ruling adopting Dkt. No. 25 is permitted to stand; (4) immediately reinstate the status quo protection as to title to the Clinton Road property (Dkt. No. 20) pending resolution of this motion; (5) declare that the Rule 11 show cause directive was never served on Defendants and therefore never bound them, without prejudice to the issuance of a new, properly served show cause order should the Court conclude further inquiry remains warranted; and (6) grant such other and further relief as this Court deems just and proper.

Dated: June 22, 2026                          Respectfully submitted,
       New Milford, CT


                                              _Carmine Amelio_

                                              Carmine Amelio, *Defendant Pro Se*

Alfonso Amelio, *Defendant Pro Se*

Paul Amelio, *Defendant Pro Se*

37 Main Street #337
New Milford, CT 06776
Phone: 412-612-6774
e. cpamelio@gmail.com